[L.A. No. 29781. In Bank. Sept. 3, 1971.]

ODIS GRIMES, Petitioner, v.
THE MUNICIPAL COURT FOR THE CENTRAL JUDICIAL
DISTRICT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

644

---

## COUNSEL

Frank L. Williams, Jr., Public Defender, and James R. Goff, Deputy Public Defender, for Petitioner.

Cecil Hicks, District Attorney, Michael R. Capizzi and Oretta D. Sears, Deputy District Attorneys, for Respondent and for Real Party in Interest.

## Opinion

**WRIGHT, C. J.**—Petitioner seeks a writ of mandate to compel respondent court to order a reporter's transcript of his trial prepared at county expense for use in appealing his conviction of refusing to disperse upon a lawful command (Pen. Code, § 416), a misdemeanor. We have concluded that petitioner is not entitled to a free transcript because he has not complied with the requirements set forth in our decision in *Magezis* v. *Municipal Court* (1970) 3 Cal.3d 54 [88 Cal.Rptr. 713, 473 P.2d 353].

Petitioner was arrested on April 16, 1969, and upon arraignment pleaded not guilty to the charge of violating Penal Code section 416. Trial by jury was set for June 10, but petitioner failed to appear and a bench warrant issued for his arrest. After being returned to the court and after numerous continuances at his request, petitioner ultimately waived a jury trial and was found guilty on January 13, 1970, upon trial by the court.

Notice of appeal was filed on January 22, and on January 28 petitioner's trial counsel was relieved and the public defender was appointed to represent him. A hearing for the purpose of arriving at a settled statement of facts was scheduled before respondent court near the end of February, but petitioner failed to appear. The record on appeal, without a settled statement of facts, was certified to the appellate department of the superior court on March 2, and on April 30 the appellate department relieved petitioner from default for faliure to have filed a brief, reappointed the public defender to represent petitioner on appeal and ordered petitioner's trial attorney to cooperate with the public defender in preparing and filing a settled statement of facts. The appellate department remanded the case and directed the respondent court to accept the statement if filed within 10 days. On May 7 the respondent court denied petitioner's motion for the preparation of the trial transcript at county expense. On the following day the appellate department also denied the same motion but granted petitioner an extension of time within which to file a settled statement to May 20. A settled statement has never been filed and petitioner seeks a writ of mandate from this court directing respondent court to order the trial transcript prepared at county expense.

Petitioner's motion for the free transcript was made in the respondent court upon the grounds that petitioner was indigent and that his trial counsel was unable to assist in preparing a settled statement. The motion was supported only by petitioner's declaration that he could not reconstruct the testimony of the witnesses at his trial, and by a declaration of the public defender that he had been "unable to get a response to requests for

assistance from Michael Gerbosi, [petitioner's] trial attorney, because of his present representation of another defendant being tried for Murder," and that the public defender "[had] been told and [did] believe that Mr. Gerbosi [was] unable to reconstruct the testimony of the witnesses sufficient to prepare a record so that the sufficiency of the evidence of [petitioner's] guilt may be reviewed." These declarations were patently insufficient to meet the requirements of *Magezis*.

In *Magezis* we held that before an indigent misdemeanant is entitled to a free transcript on appeal he must first attempt to reach agreement upon a settled statement of facts. ■ The transcript will be provided only if the parties cannot agree or if the settled statement would be inadequate. ■ The misdemeanant "must show in a reasonably particularized presentation the reasons why [he] cannot inform the reviewing court by a settled statement of the claimed inadequacies and errors." (*Magezis* v. *Municipal Court, supra*, 3 Cal.3d 54, 58.) Petitioner in the instant case has not complied with *Magezis* because there is nothing in the declarations filed in the trial court which indicates that he had attempted to obtain agreement upon a settled statement. It is impossible to determine whether the parties cannot agree or whether a settled statement would be inadequate unless there has first been a real attempt at agreement.

Petitioner offered no explanation for his failure to contact either the trial judge or the prosecutor. ■ In municipal courts where reporters are seldom present, recourse to the trial judge's notes is a generally accepted method by which a settled statement is successfully prepared. While petitioner in the instant case cannot be compelled to rely upon the notes of the trial judge and the prosecutor, the fact remains that petitioner is in no position to claim that those notes are inadequate or that he does not agree with them until he has at least attempted to contact the persons who compiled them.

The record reflects that the public defender also failed to contact a fellow deputy from the same office who represented a codefendant of petitioner at trial. There is a reasonable possibility that the notes and recollections of such deputy would have been useful in the preparation of a settled statement. ■ *Magezis* places the burden on the appellant to contact the parties who were involved in the trial, and thereafter to demonstrate to the court why the notes and recollections of these parties would not be of any assistance in the preparation of a settled statement. Petitioner made no showing before the trial court that he has complied with these requirements.

■ The only person petitioner attempted to contact within the require-

ments of *Magezis* was his trial attorney. Petitioner states that he was unable to get a response from the attorney because of the attorney's involvement in another trial, and that in any event he was told that the attorney would be unable to reconstruct the testimony adduced at trial. If this statement is to be deemed a "reasonably particularized presentation [of] the reasons why [he] cannot inform the reviewing court by a settled statement of the claimed inadequacies and errors," then the requirements of *Magezis* would be rendered meaningless.

The public defender was appointed to represent petitioner on appeal on January 28, 1970, and his declaration before the trial court was not filed until May 7. He had more than three months to contact the trial attorney, and *Magezis* requires an explanation of his failure to do so. As previously stated, a hearing on the settled statement of facts was scheduled before the trial court near the end of February 1970. Petitioner neither appeared at the hearing nor communicated in any way with the court. He made no attempt to have a settled statement prepared and he did not ask for a transcript. If petitioner had truly intended to contact his trial attorney and to reach agreement on a settled statement, the minimum bona fide effort would have included his appearance at the hearing which was scheduled for that very purpose. Finally, on April 30 the appellate department issued an order requiring the trial attorney to cooperate with the public defender in preparing a settled statement. Petitioner has offered no explanation for his failure to seek the court's aid in compelling the assistance of his trial attorney.

■ Whether to grant a motion for a free transcript to an indigent misdemeanant is a question to be initially resolved by the trial court. It is evident that petitioner's declarations filed in the trial court did not comply with *Magezis* and that the denial of petitioner's request was therefore a proper exercise of the trial court's discretion.

The alternative writ of mandate is discharged, and a peremptory writ is denied.

McComb, J., Burke, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

The majority have fallen into unfortunate error on both of the issues before us. First, the rule of *Magezis* v. *Municipal Court* (1970) 3 Cal.3d 54 [88 Cal.Rptr. 713, 473 P.2d 353], should not apply to a case in which defendant has new counsel on appeal. Second, even if, *arguendo, Magezis* is apposite under such circumstances this petitioner has met the burden of showing he was unable to prepare a proposed settled statement.

## I

The right to appeal is basic. Implicit in that right is the need for the most effective, not necessarily the most economical, presentation of the issues on appeal. In many instances, as this court indicated in *Magezis*, an appropriate record can be made by means of a settled statement. But it seems elementary that a transcript is indispensable when a defendant has new counsel on appeal, for the appellate counsel, who was not present at trial, lacks the knowledge to determine whether a settled statement will be an adequate substitute for a transcript.

In the instant case petitioner informed the public defender who took over representation on appeal that in his view the evidence was insufficient to justify conviction. Since petitioner is a layman he is, of course, unable to weigh the evidence with any degree of objectivity, and he cannot be expected to recognize whether other legal grounds for appeal exist, such as improper instructions, errors in the admission or exclusion of evidence, prejudicial misconduct of the prosecutor or the judge, or even incompetency of trial counsel. The attorney who represents a defendant on appeal must be made fully aware of the trial proceedings in order to responsibly discharge his duties. He cannot determine the grounds for an appeal until he is apprised of the prior proceedings in considerable detail, and he is unable to make an intelligent assessment of whether or not he needs a transcript or whether a settled statement will suffice, absent a determination of the contentions he will make on appeal.

The lacuna in the appellate attorneys' knowledge cannot adequately be filled by mere conversations with the attorney who represented the defendant at trial. No matter how conscientiously the trial attorney attempts to relate the testimony and proceedings occurring at trial, he will be required to exercise some degree of selection. What might be significant to the attorney on appeal may not have been deemed of importance to the trial attorney, and vice versa. The contentions which the attorney on appeal could assert on behalf of his client would be circumscribed by the information which the trial attorney considered consequential.[1] And the new attorney would have no independent recollection of events to enable him to enter into a settled statement. These considerations are of vital importance to a defendant since under our rules the superior court cannot consider a ground of appeal if the settled statement does not fully relate the evidence necessary for a decision thereon. (Cal. Rules of Court, rule 184(b).)

---

[1] The problem cannot be solved by compelling trial counsel to settle the statement before he is relieved as attorney of record since he will have no way of knowing which portions of the record were of significance without precise knowledge of the contentions subsequently to be made on appeal.

An appellate counsel's predicament in such a situation has been perceptively described as follows: ". . . the new counsel is operating under serious handicaps. Normally he has no prior acquaintance with the trial proceedings and no personal knowledge of the case which would form a basis for sound judgment. Normally no transcript is in existence at this stage, so he cannot make his own independent analysis of the trial proceedings.

"In order to investigate whether the appeal involves one or more 'not plainly frivolous' issues, counsel may examine the formal documents on record in the trial court; he may interview his client; he may discuss the case with defendant's trial counsel and with the prosecutor; he may try to work out with the prosecutor an 'agreed statement' of the case, despite the fact that he lacks the information necessary to assure himself that the agreed statement would be an accurate one; he may ask the official court reporter as a courtesy to read back certain limited portions of the reporter's shorthand notes (or all of them, if the trial was a short one); and it has been suggested—though perhaps without too much regard for the practicalities of some situations—that he may even interview the trial judge and seek to inspect any notes which the trial judge kept at the trial proceedings. Such efforts are apt to be incredibly time-consuming and frustrating, and sometimes may arouse in counsel a feeling that he would be well advised to avoid future assignments of appellate in forma pauperis work. But worse than that, in many instances these efforts will be wholly unsatisfactory as a means of safeguarding the defendant's rights.

"Recollections and notes of trial counsel and of others are apt to be faulty and incomplete. Frequently, issues simply cannot even be seen— let alone assessed—without reading an accurate transcript. Particularly is this true of questions relating to evidence or to the judge's charge; and it may also apply to many other types of questions. Moreover, the actual record (if appellate counsel could have it to inspect) might disclose issues substantial enough to constitute probable or possible 'plain error' even though trial counsel was not aware of their existence; and the indigent should have the same opportunity as the wealthy to urge that plain error should be noticed on appeal. In short, a conscientious counsel freshly entering the case at the appellate stage normally is likely to conclude that a full or partial transcript of the trial proceedings will be indispensable if the requisite 'dependable record' is to be obtained as a basis for evaluating the case." (Boskey, *The Right to Counsel in Appellate Proceedings* (1961) 45 Minn.L.Rev. 783, 792-793.)

A number of cases have held or stated that a defendant is entitled to a transcript if the attorney who represents him on appeal was not his trial

attorney. (*Hardy* v. *United States* (1963) 375 U.S. 277, 279-282 [11 L.Ed.2d 331, 333-335, 84 S.Ct. 424]; *Tate* v. *United States* (1966) 359 F.2d 245, 253, 254 [123 App.D.C. 261]; *Richards* v. *Townsend* (N.D.Cal. 1969) 303 F.Supp. 793, 795-796;[2] *Gaskins* v. *United States* (D.C.App. 1970) 265 A.2d 589, 590-592; see *United States* v. *Shoaf* (4th Cir. 1964) 341 F.2d 832, 834-835; cf. *Little* v. *Turner* (10th Cir. 1968) 402 F.2d 495, 498; *Peterson* v. *United States* (9th Cir. 1965) 351 F.2d 606, 608; *Taylor* v. *Pegelow* (4th Cir. 1964) 335 F.2d 147, 148.) No cases to the contrary have been cited or found.

In *Hardy* v. *United States, supra,* 375 U.S. 277, the United States Supreme Court concluded that if new counsel represents an indigent on appeal he cannot faithfully discharge the obligation which the court has placed upon him unless he can read the entire transcript. Although this holding was based upon a federal procedural rule rather than constitutional considerations[3] a number of the cases cited have recognized that a transcript is essential when a new attorney represents the defendant on appeal. In *Gaskins* v. *United States, supra,* 265 A.2d 589, 590-592, the court stated, "[C]onsiderations of equal protection of the laws permeate the entire criminal appellate process. . . . However, in the District of Columbia the right to free transcripts for indigents on appeal from conviction does not necessarily rest upon a constitutional predicate because adequate statutory framework combined with judicial decisions have made resort to the Constitution unnecessary . . . . [W]hen new counsel filed . . . the . . . motion for the . . . transcript of . . . proceedings the trial judge correctly undertook to rule on the request without requiring him to demonstrate a need for specific parts— something which a stranger to the case would find impossible . . . . [W]here trial counsel is not going to continue with the case on appeal . . . we think an appellant may not be forced to proceed" on the basis of an agreed statement of proceedings and evidence.

In *United States* v. *Shoaf, supra,* 341 F.2d 832, 834, it was said, "In a direct appeal . . . a full transcript of the trial would be the basic starting

---

[2]Petitioner relies particularly upon *Richards.* In that case, a defendant was convicted of a misdemeanor in a California court and was assigned new counsel on appeal. The federal court ordered that a copy of the transcript be provided without charge on constitutional grounds and on the basis of the holding in *Hardy.* The court found that appellate counsel had made a bona fide attempt to draw up a settled statement but without success.

[3]Rule 52(b) of the Federal Rules of Criminal Procedure provides, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *Hardy* held that the right to notice such defects is illusory if no transcript is available to one whose lawyer enters the case after the trial is ended. Four justices concurred in the court's opinion but expressed the view that a full transcript should be provided in all federal criminal cases to defendants who cannot afford to purchase them whenever they seek to prosecute an appeal.

point for any lawyer undertaking to handle the appeal if he had not participated in the trial. Whether or not his client felt any specific need for a transcript or was able to point out in advance trial error meriting appellate review, all lawyers would recognize the attorney's need for a transcript."

It seems evident that new counsel on appeal is not in a position to "show in a reasonably particularized presentation the reasons why [the defendant] . . . cannot inform the reviewing court by a settled statement of the claimed inadequacies and errors" (*Magezis* v. *Municipal Court, supra,* 3 Cal.3d at p. 58) and that a transcript is necessary for an adequate and effective appellate review.

There seems little likelihood that a defendant will deliberately abuse the right to a free transcript by changing his lawyer on appeal for the sole purpose of obtaining a transcript. In the instant case petitioner was financially able to retain counsel for trial but because of his asserted indigency at the time of appeal he could not afford an attorney to prosecute the appeal and the public defender was appointed to represent him. There is no doubt his request for a new attorney to appeal resulted from indigency after the trial rather than from a calculated scheme to obtain a free transcript.

There is little possibility of abuse even when the defendant is indigent at both the trial and the appellate stages. In such a situation the public defender would under ordinary circumstances represent him at trial and also on appeal if he determines that an appeal is warranted. A defendant may, of course, retain private counsel for the appeal but it would follow that such a defendant would not be indigent and would not be entitled to a free transcript. (*In re Henderson* (1964) 61 Cal.2d 541, 543 [39 Cal. Rptr. 373, 393 P.2d 685]; *Preston* v. *Municipal Court* (1961) 188 Cal. App.2d 76, 79 [10 Cal.Rptr. 301].)

## II

Even if we were to hold that the fact counsel has entered the case after trial is not sufficient to justify the need for a transcript, petitioner here clearly met his burden of showing that a settled statement would not be an adequate substitute for a transcript.

Respondent's claim to the contrary is based primarily on an affidavit by the trial judge and another by the deputy district attorney who tried the case, both appended to the return to the petition for the writ of mandate. The trial judge declared that he took extensive and comprehensive notes of the evidence presented at the trial, that he suggested to petitioner's attorney that petitioner could achieve the same result by a settled statement of facts

as by a transcript, that affiant offered his notes of the trial to petitioner's attorney and is available to explain the notes as needed but no explanation of the notes was requested, and that he believed a settled statement of facts could be reached to the satisfaction of all concerned without undue difficulty.

The declaration of the deputy district attorney states that five police officers were the only prosecution witnesses, that the evidence presented by them was limited and the time was taken up primarily by cross-examination, and that he kept notes of all the testimony and believed a settled statement could be prepared without undue difficulty and to the satisfaction of all parties, but that he had not yet been approached by petitioner's attorney in this regard.

Respondent states that petitioner's trial was consolidated with the trial of codefendants, one of whom was also represented by the public defender's office, and that petitioner could have availed himself of this source of information to ascertain the events at trial. Finally, it is claimed, the court ordered petitioner's trial attorney to cooperate with the public defender in the preparation of a statement and petitioner could have taken advantage of the court's order to compel the trial attorney to assist him.

The public defender has filed a declaration in support of his petition for the writ stating that he has tried numerous times to enlist the cooperation of petitioner's trial attorney without success, that the trial attorney maintains that he is unable to recall the testimony of the witnesses sufficiently to assist in preparing a proposed statement of facts on appeal and his trial notes are incomprehensible,[4] and that although the trial attorney assured the declarant that he would prepare an affidavit to this effect, he had not done so. The public defender asserts further that the trial judge's notes have been submitted to him but they are undecipherable and the judge has indicated that he was not sure he could decipher the notes. It is also asserted that the judge has expressed his view that petitioner's appeal is without merit.

---

[4] In the showing made before the trial court, the public defender was unable to assert with certainty that the trial attorney could not recall the testimony because, as his declaration before the trial court states, he received no response to requests for assistance from the trial attorney, who was at that time representing another defendant on a murder charge. The trial affidavit does state, however, that the public defender was "told" the attorney at trial could not recall the testimony. This surmise was elevated to a certainty by the time petitioner sought a writ of mandate before the Court of Appeal. The public defender's affidavit before that court states that he had finally been in touch with the trial attorney, who maintained that he was unable to recall the testimony sufficiently to assist the public defender in prosecuting the appeal. The majority opinion does not mention the affidavit filed before the Court of Appeal, executed after the public defender had finally contacted the trial attorney.

If, as must be concluded from the declaration of the public defender, petitioner's trial attorney is unable to recall the testimony and his notes are incomprehensible,[5] petitioner is deprived of his only advocate in the crucial process of settling the statement of facts relative to prior proceedings. His attorney on appeal can be of no assistance since he was not present at the trial. Petitioner cannot, of course, be compelled to accept the recollections and notes of the prosecutor in settling the statement. Nor should he be required to rely upon the trial judge's notes. The function of the trial judge is to correct the settled statement so as to fairly reflect the evidence or other proceedings. (Cal. Rules of Court, rule 187.) His personal participation in the initial attempt to determine the substance of events at the trial is inconsistent with this function.[6] He would in effect be helping to prepare a document which court rules require him to correct and certify. Moreover, if a defendant cannot recall the events at trial, he has no way to determine if the judge's notes are accurate and complete. The judge does not record the testimony verbatim and the defendant cannot know of significant omissions which could form the basis of grounds for appeal.

The majority opinion suggests that the public defender should have interviewed a colleague who represented a codefendant at the trial to ascertain the events which transpired. While such an interview could be of some assistance to trial counsel, it would have been of no avail to appellate counsel, who would have no way of determining the accuracy of the codefendant counsel's recollection. It also appears that the interests of the two defendants were not identical, since this petitioner was convicted and his codefendant was acquitted.

The majority opinion also asserts that the public defender had more than three months to contact the trial attorney and that the failure to make contact within that period indicates that petitioner did not make a bona fide attempt to reach a settled statement. First of all, the record is not clear as to the date the public defender was appointed. Respondent states that petitioner's private counsel was relieved for the appeal on April 30, 1970,

---

[5]The majority opinion suggests that petitioner might have compelled his trial attorney to obey the court's order to cooperate with the public defender in formulating a statement of fact. Even if the court had the authority to order the trial attorney (who was no longer representing petitioner and who was not before the court) to cooperate in reconstructing the facts of a trial which had occurred over four months before, I know of no procedure by which petitioner could have compelled the trial attorney to appear in court for the purpose of formulating a statement regarding events he claims he cannot remember.

[6]It is not suggested that a trial attorney may not avail himself of the judge's notes to check the accuracy of his own recollection.

and that the public defender was appointed on January 28, 1970, six days after the filing of the notice of appeal. There is some indication that between these two dates defendant was attempting to vacate the appointment of the public defender as his counsel on appeal. The minutes for April 30 state that petitioner was in court with his counsel, the deputy public defender, and that the court "appointed" the public defender to represent petitioner. The motion for a free transcript was made seven days later, on May 7.

Even assuming, as does the majority opinion, that the public defender had more than three months to contact the trial attorney, it is shown by the uncontradicted evidence that the trial attorney failed to respond to the inquiries directed to him. Whether such refusal occurred over a period of three months, six months or a year, is irrelevant.

The majority opinion's reliance upon the failure of petitioner to appear at a settlement conference in February 1970 is also unwarranted. The record is not at all clear who, if anyone, was representing petitioner in February 1970. Even if he had an attorney at that time, it is difficult to see how petitioner could have intelligently participated in a conference relative to a settled statement with no information from his trial attorney as to what had occurred at the trial.

### III

Petitioner asserts that the evidence was insufficient for conviction. The trial consumed six days, unusually long for a misdemeanor proceeding, and reconstruction of the testimony, particularly if it was conflicting, would be difficult at best.

It is important to bear in mind that the purpose underlying the restriction of an indigent appellant's right to a full transcript for misdemeanor convictions is economic. (*Magezis* v. *Municipal Court, supra,* 3 Cal.3d 54, 58.) While the economic factor might in some cases justify the denial of a transcript when the same attorney represents a defendant on appeal as at trial, such consideration would seem to favor furnishing a transcript where the indigent has a new attorney on appeal, because of the difficulty encountered by the appellate attorney in ascertaining the events at trial with sufficient accuracy and detail to enable him to adequately prosecute the appeal. The value of the time consumed by the court-appointed appellate attorney, the judge, the prosecutor, the trial attorney, and other personnel in attempting to reconstruct the record undoubtedly will exceed the cost of a transcript.

In the present case, for example, there was a proceeding which resulted in a court order that the trial attorney (who was not before the court and who had represented petitioner at the trial occurring more than four months previously) cooperate with the public defender in formulating a statement, the public defender made a number of unsuccessful attempts to enlist the aid of the trial attorney, the trial court's notes were submitted to the public defender, and he attempted to decipher them, and various motions and other proceedings were brought in the trial court as well as at the appellate level to compel the preparation of a transcript. The majority opinion suggests that we should deny relief because, in addition to the steps outlined, the public defender could have brought a proceeding to enforce the court's order for the trial attorney to cooperate in the formulation of a statement, the public defender might have interviewed the trial judge in an attempt to decipher the notes he made at trial, and he should have made an effort to obtain information about the trial from a codefendant's attorney. The substantial funds to finance all these time-consuming extraneous legal and extralegal endeavors come from the same public source as the considerably lesser sum which could have been used to pay for a transcript. It is noteworthy that even if these heroic efforts resulted in ultimate agreement on a settled statement, the product would be considerably less valuable to the reviewing court than a transcript of the actual testimony.

In the interest of fiscal and judicial economy, this petition should have long since been granted. There comes to mind the melancholy observation of Chief Judge Edgerton in a dissenting opinion with regard to an analogous matter: "[T]he burden of prosecuting, defending, and deciding appeals, though it is greater, is not inordinately greater than the burden of prosecuting and deciding disputes . . . over the question whether an appeal should be made possible." (*Cash* v. *United States* (1958) 261 F.2d 731, 740-741 [104 App.D.C. 265]; judgment vacated 357 U.S. 219 [2 L. Ed.2d 1361, 78 S.Ct. 1365].)

I would issue the writ.

Peters, J., and Tobriner, J., concurred.

Petitioner's application for a rehearing was denied October 21, 1971. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.