[Civ. No. 30066. Fourth Dist., Div. Three. June 17, 1983.]

LARRY RONALD ANDRUS, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE WEST ORANGE COUNTY
JUDICIAL DISTRICT OF ORANGE COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

COUNSEL

Cohen, Stokke & Davis, Allan H. Stokke and Robison D. Harley, Jr., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and J. Philip Ashey, Deputy District Attorneys, for Real Party in Interest and Respondent.

OPINION

CROSBY, J.—Larry Andrus is charged with misdemeanor driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)). The municipal court denied his pretrial motion for a court reporter or other recording device, and the superior court declined his writ petition because he did not claim indigency. Andrus filed a timely notice of appeal on June 22, 1982.

We consider two questions: (1) Does repeal of the statutory right to appeal from an extraordinary writ proceeding in the superior court brought to challenge an action of the municipal court apply to appeals pending on the effective date of the legislation? (2) Is a defendant in a misdemeanor proceeding entitled to a state provided court reporter or other means of securing a verbatim record on request in the absence of proof of indigency?

I

When the notice of appeal was filed, Andrus was unquestionably entitled to appeal as a matter of statutory right. However, Code of Civil Procedure section 904.1, the source of that right, was amended effective January 1, 1983. It now reads, "An appeal may be taken from a superior court in the following cases: (a) From a judgment, except . . . (4) a judgment granting or denying a petition for issuance of a writ of mandamus or prohibition directed to a municipal court or a justice court or the judge or judges thereof which relates to a matter pending in the municipal or justice court. However, an appellate court may, in its discretion, review a judgment granting or denying a petition for issuance of a writ of mandamus or prohibition upon petition for an extraordinary writ." At our request, the parties in this and other similar cases have filed supplemental briefs concerning the effect, if any, of the amendment on pending matters. We have concluded the statute should be applied to unresolved appeals filed before January 1, 1983, and that each must be treated as a petition for extraordinary relief. (*People* v. *Cimarusti* (1978) 81 Cal.App.3d 314, 320-321 [146 Cal.Rptr. 421]; *Branham* v. *State Farm Mut. Auto. Ins. Co.* (1975) 48 Cal.App.3d 27, 32-33 [121 Cal.Rptr. 304]; *U.S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 11-12 [112 Cal.Rptr. 18]; *Clovis Ready Mix Co.* v. *Aetna Freight Lines* (1972) 25 Cal.App.3d 276, 281-282 [101 Cal.Rptr. 820].)

*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865] states the general rule: "no statute is to be given retroactive effect unless the Legislature has expressly so declared. . . ." (See also *Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828 [114 Cal.Rptr. 589, 523 P.2d 629].) Although legislative enactments are presumed to operate prospectively, this presumption is rebuttable and must yield to the overriding principle that the intent of the Legislature is to be given primary effect.[1] (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128

---

[1] Andrus relies in part on Code of Civil Procedure section 3, as do many of the cases which deny retroactive application to particular enactments. (See, e.g., *People* ex rel. *City of Bellflower* v. *Bellflower County Water Dist.* (1966) 247 Cal.App.2d 344, 351 [55 Cal.Rptr. 584].) That provision, however, seems to us of little assistance in considering the retroactive application of *amendments* to the Code of Civil Procedure. Section 2 provides, "This Code takes effect at twelve o'clock noon, on the first day of January, eighteen hundred and seventy-three." Section 3 provides, "No part of it is retroactive, unless expressly so declared." "It" appears to refer to the code as effective on January 1, 1873, just as section 2 obviously does—not future amendments. If this is true, section 3 does not assist in our inquiry, 110 years later. (Cf. *Central Pacific Railroad Company* v. *Shackelford* (1883) 63 Cal. 261.) Section 18 appears to support our understanding; it provides, "No statute, law, or rule is continued in force because it is consistent with the provisions of this Code on the same subject; but in all cases provided for by this Code, all statutes, laws, and rules heretofore in force in this State, whether consistent or not with the provisions of this Code, unless expressly continued in force by it, are repealed and abrogated. This repeal or abrogation does not revive any former law heretofore repealed, nor does it affect any right already existing or accrued, or any action or proceeding already taken,

Cal.Rptr. 427, 546 P.2d 1371]; *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1977) 71 Cal.App.3d 133, 140 [139 Cal.Rptr. 410]; *People* v. *White* (1978) 77 Cal.App.3d Supp. 17, 21 [144 Cal.Rptr. 128].) Did the Legislature intend the amendment to section 904.1 to operate retroactively? We believe it did.

 Although the language of the amendment does not expressly provide for retrospective application, that factor is not dispositive where the Legislature's intent is nonetheless clear. (*In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948].) In *Estrada* the Supreme Court disapproved a long line of authority and gave retroactive effect to an amendment of the Penal Code, despite the lack of legislative direction concerning pending cases and the presumption against retroactive application.[2] The court explained the "rule of construction [against retroactivity], however, is not a straightjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It [the presumption against retroactivity] is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent." (*Id.*, at p. 746.) In light of *Estrada*, "we must address 'all pertinent factors' when attempting to divine the legislative purpose." (*In re Marriage of Bouquet, supra,* 16 Cal.3d 583, 587.) The statute itself is the prime indicator of legislative intent; but "other considerations include the context and object of the legislation, the evil sought to be remedied, and the public policy sought to be implemented." (*Leonard* v. *Department of Motor Vehicles* (1983) (Cal.App.)*; *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].)

 The obvious goal of the amendment of section 904.1 suggests the logic of retroactive application.[3] The amendment brings the statutory appellate scheme into conformity with the hierarchical framework of the judicial branch set forth in our Constitution. It was long overdue. There is seldom a good reason to deal with relatively minor municipal and justice court cases in the Court of Appeal before trial. A criminal defendant has an absolute right to seek posttrial review in the appellate department of the superior court, and bond on appeal cannot be denied in a misdemeanor case (Pen. Code, § 1272). When there is sufficient cause to review an issue before trial, the writ procedure of

---

except as in this Code provided; nor does it affect any private statute not expressly repealed." To the extent section 3 has *any* application to this case, viewed in its proper context, an extant or accrued right would have to be located to which it might attach as a minimum. We do not find a pretrial toehold in the Court of Appeal to rise to that level.

[2] Penal Code section 3 is similar to Code of Civil Procedure section 3.

[3] Retroactive is not an apt word, of course. No one argues the change should apply to undo past decisions in pretrial appeals in cases still pending somewhere in the system. Those cases clearly involve extant and accrued rights. (Fn. 1, *ante.*) We use "retroactive" to refer only to pending pretrial appeals, a concept sometimes called "pipeline" retroactivity.

*Reporter's Note: Deleted on direction of Supreme Court by order dated September 8, 1983.

Code of Civil Procedure section 904.1, subdivision (a)(4) is available.[4] Before the change, any trivial issue could be litigated successively by a determined litigant at least four times: once in the municipal court, once in the superior court, once in this court, and once in the appellate department of the superior court. The proceeding in this court alone entails the preparation of the record, briefs by the parties, oral argument and a written opinion—and endless delay. (*Burrus* v. *Municipal Court* (1973) 36 Cal.App.3d 233, 238 [111 Cal.Rptr. 539].)

An accused in the superior court has never enjoyed a review of a pretrial ruling as a matter of right, however. The Court of Appeal did not fail to commend this absurdity to the Legislature's attention: "It is an anomaly that appeal by right lies from a discretionary decision of the superior court while a decision on the merits on the same point by the appellate department of the superior court is not appealable to us by right. Equally it makes no sense that a superior court litigant cannot appeal to us from a pretrial ruling on the same point of law merely because the case arose from a superior court trial action. Is it not true that the superior court handles problems generally more serious in nature than do justice and municipal courts?" (*Gilbert* v. *Municipal Court* (1977) 73 Cal. App.3d 723, 733 [140 Cal.Rptr. 897]; see also *Conway* v. *Municipal Court* (1980) 107 Cal.App.3d 1009, 1020 [166 Cal.Rptr. 246]; *Monica Theater* v. *Municipal Court* (1970) 9 Cal.App.3d 1, 12 [88 Cal.Rptr. 71].)

Moreover, the municipal court is placed in an untenable situation when a misdemeanor is pending pretrial appeal in this court. It can stay the trial and await the outcome, potentially experiencing an intolerable delay, as here, of over a year; or it can proceed to trial and abet the appealing litigant in the possible creation of concurrent, parallel appeals on the same issue in the superior court appellate department and the Court of Appeal. Since Court of Appeal review of appellate department decisions is quite circumscribed, the municipal court could wind up with two contemporaneous and inconsistent rulings from higher courts on the same legal point in the same case. (*Mendieta* v. *Municipal Court* (1980) 109 Cal.App.3d 290, 293 [168 Cal.Rptr. 1].)

To deny retroactive application to the amendment of section 904.1 is to subscribe to the notion that the Legislature desired to postpone the demise of a procedural loophole which was inequitable to defendants accused of more serious offenses, placed unnecessary and redundant burdens on the appellate courts, and provided for concurrent and possibly inconsistent appellate review of the same issue. We find that proposition absurd. ■ The Legislature must

---

[4]Sufficient cause will not generally arise; appeal after trial usually provides an adequate remedy, but sometimes it does not. (See *Rhinehart* v. *Municipal Court* (1983) (Cal.App)*, for example.)

---

*Reporter's note: Hearing granted, for Supreme Court opinion see 35 Cal.3d 772.

be presumed to act in light of existing judicial decisions. (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) There could be no good reason to differentiate between cases where the superior court ruled on a petition for extraordinary relief before rather than after January 1, 1983, so long as pending appeals are treated as writ petitions pursuant to the statutory change.

The district attorney argues, persuasively in our view, where a statutory procedural right or remedy is repealed, the repealer is effective on the date it is enacted in the absence of a savings clause.[5] Since the pretrial writ/appeal procedure was a purely statutory creature, we hold it expired, like most parasites, with the demise of its host. (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 109 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1].)

Finally, denial of a pretrial right to appeal can hardly be termed an ex post facto law: "The doctrine does not apply to trivial matters but to some vested and substantial right possessed at the time of the offense. *Nor does it apply to purely procedural change.*" (*Vlick* v. *Superior Court* (1982) 128 Cal. App.3d 992, 1001 [180 Cal.Rptr. 742], italics added.) Ex post facto laws operate to: (1) make criminal an act which was innocent when done; (2) make more serious an act which already was criminal when done; (3) inflict greater punishment for a criminal act than was applicable when done; (4) permit conviction for a criminal act with less evidence than was required when done; or (5) otherwise deprive defendants of substantial rights or defenses they possessed at the time of the alleged offense. (*Kring* v. *Missouri* (1883) 107 U.S. 221, 225, 228-229, 232 [27 L.Ed. 506, 507-509, 510, 2 S.Ct. 443]; *People* v. *Ward* (1958) 50 Cal.2d 702, 707, 710 [328 P.2d 777, 76 A.L.R.2d 911], disapproved on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631, 649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]; *People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 472 [106 Cal.Rptr. 519], cert. den. 414 U.S. 855 [38 L.Ed.2d 104, 94 S.Ct. 155].) Obviously none of these categories applies to the procedural change we examine here. Defendants enjoy no vested right in any particular procedure (*Thompson* v. *Missouri* (1898) 171 U.S. 380, 385-386 [43 L.Ed. 204, 207, 18 S.Ct. 922]; *People* v. *Ward, supra,* 50 Cal.2d at pp. 707-708) and are consequently not entitled to rely on an anomalous procedural device whose time has come and (finally) gone.[6]

The right to appeal is purely statutory (*People* v. *Rawlings* (1974) 42 Cal.App.3d 952, 959 [117 Cal.Rptr. 651]); and the Legislature is not precluded

---

[5]Our situation is not similar to those cases where the time within which to file a notice of appeal has been shortened; here the right to appeal pretrial has been entirely terminated. Cases arising in the former category have not, quite properly, applied shortened filing time limits to litigants who relied on the old law. (*Melde* v. *Reynolds* (1898) 120 Cal. 234 [52 P. 491].)

[6]We are aware of a number of published opinions issued since January 1, 1983, generated by the writ/appeal device. The retroactivity issue was not addressed in any of them.

from removing the right to pursue frivolous appeals, so long as appellate "avenues [are] kept free of unreasoned distinctions that can only impede open and equal access to the courts." (*Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 310 [16 L.Ed.2d 577, 581, 86 S.Ct. 1497].) The amendment to section 904.1 *removes* an impediment to "open and equal access" by relieving an overburdened appellate system from being required to hear relatively minor cases twice, thereby promoting speedier resolution of generally more serious matters in the Court of Appeal.

There can be little doubt of the Legislature's intent and consequently no good reason to delay implementation of new section 904.1, subdivision (a)(4) of the Code of Civil Procedure. However, to provide the benefit, along with the burden, of the statutory change, we will treat pending appeals as writ petitions. (*People* v. *Cimarusti, supra,* 81 Cal.App.3d 314, 320-321.) Because the substantive issue presented here is important to the efficient functioning of the municipal courts and potentially impacts on Andrus' ability to secure an adequate record for postrial appeal, we exercise our discretion to consider the merits of his claim.[7]

## II

 Andrus complains of the superior court's refusal to order the municipal court to provide a free court reporter or other means of compiling a verbatim record of his pending misdemeanor trial. He claims both lower courts erred in not following *In re Armstrong* (1981) 126 Cal.App.3d 565 [178 Cal.Rptr. 902], which requires some means of providing a verbatim record to any accused misdemeanant on request. (Cf. *People* v. *Goudeau* (1970) 8 Cal.App.3d 275 [87 Cal.Rptr. 424]; *Hidalgo* v. *Municipal Court* (1954) 129 Cal.App.2d 244 [277 P.2d 36].)

In defense of the holdings below, the prosecution advances an interpretation of *Armstrong* which can most charitably be summarized as wishful thinking; it argues, "not only does *Armstrong* not attempt to expand any duty of the court to a separate requirement of free court reporters, but under no circumstances does it require free court reporters merely upon an unexplained defense request."[8] That is *exactly* what *Armstrong* does; it could hardly be clearer: "We have, by our instant decision held that, upon request therefor, there is a constitutional right that a verbatim record be provided at public expense for all defendants in

---

[7]We have not been tilting at this particular windmill just for the fun of it. In several companion cases decided today, we find the appellant has an adequate remedy via postconviction appeal and decline to consider the question presented.

[8]Andrus requested a court reporter *or other means of providing a verbatim transcript.* We presume the prosecution employs the term "court reporter" to include other methods of providing a verbatim transcript.

misdemeanor matters." *(In re Armstrong, supra,* 126 Cal.App.3d 565, 574.) But this does not end our inquiry, for we *do* agree somewhat with the prosecution's wishful thought and must respectfully disagree with *Armstrong.* Nothing in the Constitutions of the United States or California requires a free verbatim record in misdemeanor cases on request without a showing of indigency (see *People* v. *Goudeau, supra,* 8 Cal.App.3d 275), although this state does confer the right in *felony* proceedings by statute (Code Civ. Proc., § 269).

*Armstrong* reasons as follows: (1) the state must provide a criminal defendant with a sufficiently complete record to permit proper consideration of his appeal (*In re Armstrong, supra,* 126 Cal.App.3d 565, 570, citing *March* v. *Municipal Court* (1972) 7 Cal.3d 422, 428 [102 Cal.Rptr. 597, 498 P.2d 437, 66 A.L.R. 3d 945]); (2) all felons get a free transcript on appeal (*ibid.,* citing *March* and *People* v. *Victor* (1965) 62 Cal.2d 280, 288-289 [42 Cal.Rptr. 199, 398 P.2d 391], among others); (3) the distinction between felony and misdemeanor offenses in the preparation of appellate records no longer satisfies the Fourteenth Amendment (*id.,* at p. 571, citing *Mayer* v. *City of Chicago* (1971) 404 U.S. 189, 195-196 [30 L.Ed.2d 372, 378-379, 92 S.Ct. 410]); (4) the distinction between a convicted felon's and a convicted misdemeanant's right to a free transcript on appeal has been abolished (*ibid.,* apparently relying on *Preston* v. *Municipal Court* (1961) 188 Cal.App.2d 76, 84-85 [10 Cal.Rptr. 301]). We do not believe the cited authority supports *Armstrong*'s conclusion, however.

In *March* v. *Municipal Court, supra,* 7 Cal.3d 422, seven misdemeanants convicted in the same proceeding petitioned the superior court for a free transcript on appeal. Six filed statements of indigency. The superior court denied relief to all seven on two grounds, insufficiency of the showing of indigency and lack of a bona fide effort to obtain a settled statement on appeal.

The Supreme Court found the six statements of indigency adequate but also held *Mayer* v. *City of Chicago, supra,* 404 U.S. 189 considerably weakened the requirement of a "bona fide effort" to obtain a settled statement before a free transcript in an indigent appeal was compelled. (See *Magezis* v. *Municipal Court* (1970) 3 Cal.3d 54 [88 Cal.Rptr. 713, 473 P.2d 353]; *Grimes* v. *Municipal Court* (1971) 5 Cal.3d 643 [97 Cal.Rptr. 9, 488 P.2d 169].) *March* replaced the "bona fide effort rule" with a new procedure whereby the defense need only suggest appellate issues arguably requiring a transcript, which shifts the burden to the state to demonstrate the efficacy of some alternative to a transcript. (*March* v. *Municipal Court, supra,* 7 Cal.3d 422, 431.)

We believe the question of the sufficiency of the justification for a verbatim record offered by an indigent to be virtually moribund after *Mayer, March,* and *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65] [disclosure of defense witnesses before jury selection may not be compelled]. In all but the rarest cases little more than a bare request will suffice.

It must be remembered that we discuss the question of when the state must collect a verbatim record, not the issue of when it must provide a transcript of that record. There is a world of difference. Before trial the imagination of defense counsel, the impossibility of predicting what might arise in even the simplest trial, and the court's inability to require disclosure of defense strategy almost always will combine to mandate the maintenance of a verbatim record at the request of an indigent defendant. In considering the need to prepare a transcript posttrial, knowledge will replace speculation; and the defense strategy will be known.

Moreover, the refusal to order a transcript is effectively reviewable; but there is little an appellate court can do when the collection of a verbatim record is denied and a statement cannot be settled, except to reverse for lack of an adequate record. That was, in fact, the situation in *Armstrong*; relief on *that* ground was probably appropriate. (*In re Steven B.* (1979) 25 Cal.3d 1, 6 [157 Cal.Rptr. 510, 598 P.2d 480]; *People* v. *Chessman* (1959) 52 Cal.2d 467, 486 [341 P.2d 679]; *People* v. *Valdez* (1982) 137 Cal.App.3d 21, 24-25 [187 Cal.Rptr. 65].)

*Armstrong*'s holding rests entirely on cases involving the transcript question, i.e., who pays to transcribe the record? But it fails to consider those cases which found no right to free verbatim records in misdemeanors, such as *People* v. *Goudeau, supra,* 8 Cal.App.3d 275 and *People* v. *Moreno* (1973) 32 Cal.App.3d Supp. 1 [108 Cal.Rptr. 338]. Nonetheless, *Armstrong is* careful to limit its own rule; it does *not* require the automatic preparation of a free transcript on request, only the collection of a verbatim record. We believe *Mayer,* as interpreted in *March,* and the obvious fact that transcripts presuppose verbatim records, compel that result—but only as to indigents.

*March* is at variance with one of the two points it is cited for in *Armstrong* and absolutely contradicts the other two bases of the holding. (See p. 1050, *ante.*) *March does* say the state must provide a sufficiently complete record to permit proper consideration of the appeal—but only in cases where an indigent defendant makes a plausible showing of necessity which the prosecution cannot overcome.

*March* created no new right to a free transcript for *all* litigants. The resolution of the single nonindigent's appeal in *March* tells it all: "In actions involving multiple appellants, the fact that one appellant is financially capable of procuring a transcript at his own expense, does not affect the rights of those appellants who are adjudged indigent. The indigent appellant becomes no less entitled to an adequate appeal by the fact that his codefendant, whom he may not even have known before trial, is not indigent. This is especially true since the indigent appellant has no control over the decision of the nonindigent codefen-

dant as to whether or not to purchase the transcript. [¶] It would be equally inequitable to require the nonindigent appellant to bear the entire cost of the transcript of a trial involving multiple defendants when, as in most cases, the prosecution and not the defendants determine whether the action will involve multiple defendants. Nonindigent appellants should, however, be assessed their proportionate share of the transcript cost. If in the instant action, petitioner Barnett, who did not file a financial statement, chooses to remain a party to the appeal, she should be assessed her proportionate share of the transcript cost." (*March* v. *Municipal Court, supra,* 7 Cal.3d 422, 430-431.) *March* is not in the least consistent with *Armstrong*'s claim that, after *Mayer,* the distinction between felony and misdemeanor offenses no longer satisfies the Fourteenth Amendment or that the distinction between the right to a free transcript on appeal in felonies and misdemeanors has been abolished.

The *Armstrong* quotation presenting the proposition that the " 'distinction between felony and nonfelony offenses' will no longer 'satisfy the requirements of the Fourteenth Amendment . . . .' (*Mayer* v. *City of Chicago* (1971) 404 U.S. 189, 195-196)" is grandly plucked out of context. (*In re Armstrong, supra,* 126 Cal.App.3d 565, 571.) The full text reads, "The distinction between felony and nonfelony offenses *drawn by Rule 607(b) can no more* satisfy the requirements of the Fourteenth Amendment than could the like distinction in the Wisconsin law, held invalid in *Groppi* v. *Wisconsin,* 400 U.S. 505 (1971), which permitted a change of venue in felony but not in misdemeanor trials. The size of the defendant's pocketbook bears no more relationship to his guilt or innocence in a nonfelony than in a felony case." (*Mayer* v. *City of Chicago, supra,* 404 U.S. at pp. 195-196 [30 L.Ed.2d at p. 379], italics added.) Illinois rule 607(b) authorized transcripts at state expense only in felonies; four months before the appeal was heard by the United States Supreme Court it was amended to provide free transcripts in any case where the sentence was six months in custody or longer. (*Id.,* at p. 191, fn. 2 [30 L.Ed.2d at pp. 376-377].) *Mayer* does not stand for the sweeping reconstruction of its language in *Armstrong.* It holds only that indigent misdemeanants must be provided free transcripts. This was not news in California. *Preston* v. *Municipal Court, supra,* 188 Cal.App.2d 76 reached essentially the same result a decade earlier. It is also noteworthy that our Supreme Court in *March* discussed *Mayer* (and changed its own "bona fide effort" rule in compliance) without noticing *Mayer* found the "distinction between felony and nonfelony offenses will no longer satisfy the requirements of the Fourteenth Amendment."

The rule requiring free transcripts in felony appeals in California, regardless of a showing of indigency, dates back to 1909. (*March* v. *Municipal Court, supra,* 7 Cal.3d 422, 428, fn. 3; *People* v. *Smith* (1949) 34 Cal.2d 449, 453 [211 P.2d 561]; *In re Paiva* (1948) 31 Cal.2d 503, 510 [190 P.2d 604].) If our Supreme Court had concluded *Mayer* required free transcripts or court

reporters in all misdemeanor proceedings in jurisdictions where they were provided to all felons, it certainly had an opportunity to say so. Instead, as we have seen, *March* carefully constructed a formula to divide costs to prepare the record between the state and one appellant who did not claim indigency. Moreover, a year later our Supreme Court explicitly recognized the continued vitality of the distinction between felonies and misdemeanors and how they are processed: "[W]e do not suggest that procedures utilized in our overcrowded municipal and justice courts must be identical to the procedures presently required in felony prosecutions. As this court has recognized in the past, relevant differences in the misdemeanor and felony contexts will frequently justify a difference in procedures." (*Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 302 [110 Cal.Rptr. 329, 515 P.2d 273].)[9]

Finally, we turn to the fourth basis of the *Armstrong* holding. *Preston* v. *Municipal Court, supra,* 188 Cal.App.2d 76 is apparently[10] cited for the proposition that "the distinction between a convicted felon's, and a convicted misdemeanant's, constitutional right to an adequate appellate record manifestly removed any previous decisional or statutory provision, if any there were, that only those convicted of *felonies* were entitled to such a record at state expense." (*In re Armstrong, supra,* 126 Cal.App.3d 565, 571.) But *Preston* meticulously examines and rejects three different statutory grounds urged by Preston in her quest for a free transcript in her misdemeanor appeal.[11] (See 188 Cal.App.2d at pp. 80-81.) As to the claim *Preston* somehow supports the notion that all misdemeanants should be entitled to a free transcript on appeal, we simply quote the holding of the case: "We conclude that the ruling of Hidalgo [*Hidalgo* v. *Municipal Court, supra,* 129 Cal.App.2d 244] disposes of appellant's contention that defendants in criminal cases in municipal courts are automatically entitled to free transcripts on appeal. On the other hand, appellant presents a different case from that adjudicated in Hidalgo in that she has filed her affidavit *in forma pauperis* and the trial court has accepted her allegation that she cannot prosecute her appeal without the use of the transcript." (*Preston* v. *Municipal Court, supra,* 188 Cal.App.2d 76, 81.) The court goes on to anticipate *Mayer* by following *Griffin* v. *Illinois* (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055] (indigent felon is entitled to a free transcript on appeal).

---

[9]*Mills* has *also* been misinterpreted in recent history on the question of the niceties required in the acceptance of guilty pleas in infraction cases. Compare *Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 302, footnote 13 and *People* v. *Matthews* (1983) 139 Cal.App.3d 537, 544 [188 Cal.Rptr. 796]. See also *In re Kathy P.* (1979) 25 Cal.3d 91, 98 [157 Cal.Rptr. 874, 599 P.2d 65].

[10]We say "apparently" because the citation precedes the text, but the text appears to refer back to the *Preston* citation; nothing else is cited for the statement.

[11]The reference to a possible lack of statutory authority for the distinction between the reporting of felonies and misdemeanors is substantially refuted in *Armstrong* itself, three pages later, in considering Penal Code section 1045, which provided (before *Armstrong,* that is), "In any

As we have seen, *Armstrong*'s castle is constructed on quicksand. The only real authority for the proposition that *all* accused misdemeanants are entitled to a free verbatim record on request is *Armstrong*'s own holding: "For these several reasons we hold that the complained of practice of the municipal courts of Alameda County is violative of the 'due process' and 'equal protection of the laws' provisions of the Fourteenth Amendment, and of this state's Constitution, article I, section 7." (*In re Armstrong, supra,* 126 Cal.App.3d 565, 574.)

We disagree. There is no United States Supreme Court decision requiring free verbatim records to nonindigent *felony* defendants. Due process could hardly be said to demand such a right for nonindigents accused of misdemeanors.

Is the accused misdemeanant denied equal protection simply because the magnitude of his or her alleged offense does not arise to felony status in a state which affords all felons a free record on appeal by statute? The unanimous court in *March,* which discussed equal protection at some length (in considering the type of record which must be furnished), would presumably have said so. Instead, *March* constructed a means to allocate costs between the state and the one appellant who filed no statement of indigency in the trial court. Our Supreme Court obviously did not believe its own formula denied equal protection. Neither do we.

In our view, there is a compelling state interest in *not* providing free collection of a verbatim record in all misdemeanor proceedings on request and several very good reasons for distinguishing between felonies and misdemeanors in that respect. The cost of supplying a court reporter or the equivalent in every misdemeanor proceeding on request is a needless waste of public funds. The volume of misdemeanor cases is staggering. (*People* v. *Moreno, supra,* 32 Cal.App.3d Supp. 1, 6.) But most convicted misdemeanants do not appeal, and a settled statement will be adequate for many who do.

When an unexpected event arises in a misdemeanor trial which counsel desires to preserve in verbatim form, a court reporter can generally be summoned rather quickly and the events reconstructed out of the presence of the jury. This idea will not shock veteran trial lawyers who know how to create a misdemeanor or infraction matter, where a verbatim record of the proceedings is not required to be made and where the right of a party to request a verbatim record is not provided for pursuant to any other provision of law or rule of court, if any party makes a request at least five days in advance and deposits the required fees, the court shall order that a verbatim record be made of all proceedings. Except as otherwise provided by law or rule the party requesting any reporting, recording, or transcript pursuant to this section shall pay the cost of such reporting, recording, or transcript. [¶] This section shall cease to be operative upon a final decision of an appellate court holding that there is a constitutional right or other requirement that a verbatim record or transcript be provided at public expense for indigent or any other defendants in cases subject to the provisions of this section."

record, where it seems worthwhile, by traditional methods, i.e., call witnesses to the objectionable event or recite stipulations or findings by the court. Moreover, California Rules of Court now permit any litigant to tape-record the trial—or videotape it for that matter (Cal. Rules of Court, rule 980(c)). A recording can be used as the basis for a settled statement or the preparation of a transcript.[12]

In felony cases the appeal rate runs at a level about equal to the conviction rate, and the need for a verbatim record is a virtual certainty in every case where a conviction occurs.[13] The difference in punishment is also great; and although *Preston* and *Mayer* largely dispense with this particular distinction, it still has a place in the analysis. (*People* v. *Goudeau, supra,* 8 Cal.App.3d 275, 282.) Finally, a very high percentage of those accused of felonies are indigent (and would be entitled to a free record and transcript in any event). We suspect the same is not true of accused misdemeanants. The most popular offenses in the municipal and justice courts involve the use of automobiles. People who own or regularly drive cars probably can afford the services of a court reporter for the relatively short duration of most misdemeanor trials. In smaller courtrooms, even an inexpensive tape recorder might be sufficient to capture a verbatim record from which a precise settled statement can be prepared.[14]

As was said in *Rinaldi* v. *Yeager, supra,* 384 U.S. 305, 308-309 [16 L.Ed.2d 577, 580], "The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. [Citation.] It also imposes a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand is not a demand that a statute

---

[12]This is all true in indigent trials as well; but with pretrial blinders on, the trial court is best advised to follow *Mayer, March,* and *Allen,* as discussed above, when a verbatim record is requested at the outset.

[13]California, perhaps uniquely, has simply accepted the burden of providing appellate records in *all* felony cases, despite the anomaly that an attorney is appointed at trial or on appeal only upon a showing of pecuniary need. We *do* receive a fair number of briefs containing counsel's admission of an inability to discover an appellate issue in the record; pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], we are required to make our own frequently fruitless search to confirm the fact that none exists. The cost of preparing transcripts in nonindigent *Wende* cases is not known to us, but it may be substantial. Although it is not possible to determine to what extent this state's largesse contributes to the significant number of frivolous appeals in felony cases, it must be a factor. Does it make any sense to repeat the felony experience in less serious matters?

[14]Our colleague in dissenting on this issue states, "The fact is, court reporters are provided in all superior court criminal and civil proceedings, and in preliminary examinations (Code Civ. Proc., § 269; Pen. Code, § 869). Similarly, civil litigants in municipal courts are provided court reporters at their request (Code Civ. Proc., § 274c) regardless of how insignificant or unmeritorious the claim." (*Post,* p. 1058.) True, but they are not provided *free* in most civil cases. (See Gov. Code, § 69994.6 et seq.) We do not suggest an accused misdemeanant who can afford a court reporter cannot have one at all, only that until the Legislature decides otherwise, he or she should bear the expense.

necessarily apply equally to all persons. 'The Constitution does not require things which are different in fact . . . to be treated in law as though they were the same.' [Citation.] Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made.'" [Citations.] In our view the statute struck down in *Armstrong* met the above test. ▨ As between overextended government treasuries and unwilling taxpayers on one hand and accused misdemeanants who can afford to pay on the other, it is the Legislature's prerogative to determine whether to require the former to finance what will usually turn out to be an unnecessary luxury for the latter. For the reasons stated above, with respect to the provision of a verbatim trial record, we find "relevant differences in the misdemeanor and felony contexts . . . justify a difference in procedures." (*Mills* v. *Municipal Court, supra,* 10 Cal.3d 288, 302; *People* v. *Austin* (1981) 30 Cal.3d 155 [178 Cal.Rptr. 312, 636 P.2d 1]; *In re Ricky H.* (1981) 30 Cal.3d 176 [178 Cal.Rptr. 324, 636 P.2d 13]; *In re Kathy P., supra,* 25 Cal.3d 91.)

The appeal is dismissed and, treated as a petition for extraordinary relief, denied.[15]

Trotter, P. J., concurred.

**SONENSHINE, J.,** Concurring and Dissenting.—The majority, in their quest to expose what they perceive to be the twisted reasoning of *In re Armstrong* (1981) 126 Cal.App.3d 565 [178 Cal.Rptr. 902], resort to their own distorted logic to reach a conclusion which neither comports with precedent nor satisfies due process. While I concur for the reasons stated by the majority in holding Code of Civil Procedure section 904.1 retroactive and thus dismiss this appeal, I would issue the peremptory writ commanding the municipal court to provide a court reporter at trial, without a showing of indigency, at state expense.[1]

*Armstrong* correctly holds upon request, and without showing indigency, a verbatim record must be provided at state expense in misdemeanor prosecutions. This holding was a consequence of Armstrong's inability to obtain a settled statement on appeal (Cal. Rules of Court, rule 187) which in turn resulted from the inability of the trial court, prosecution and defense to agree on the facts which led to Armstrong's conviction. In essence, *Armstrong* acknowl-

---

[15]Because we have no way of knowing if Andrus is indigent or reasonably relied on *Armstrong* and *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], in not submitting a claim of indigency, he should be afforded an indigency determination in the municipal court upon request. (See *March* v. *Municipal Court, supra,* 7 Cal.3d 422, 431.)

[1]The majority correctly assumes a court reporter is synonymous with "or other recording device."

edged a constitutionally adequate appeal includes the due process guarantee of an adequate appellate record. *Armstrong* found due process not satisfied by a settled statement procedure which, by its very nature, requires compromise among the memories and perceptions of participants with a stake in its outcome.

*March* v. *Municipal Court* (1972) 7 Cal.3d 422 [102 Cal.Rptr. 597, 498 P.2d 437, 66 A.L.R.3d 945] followed a long line of cases which first required free transcripts to indigent felons on appeal (*Griffin* v. *Illinois* (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055]) and subsequently provided them to indigent misdemeanants. (*Mayer* v. *City of Chicago* (1971) 404 U.S. 189 [30 L.Ed.2d 372, 92 S.Ct. 410].) The majority goes to great lengths to chastise the court in *Armstrong* for failing to limit the provision of court reporters to indigent misdemeanants only. The majority's analysis of *Armstrong* concludes the court erred in ordering reporters for all misdemeanants since all of the cases cited by *Armstrong* hold the right to a *free transcript* for misdemeanants requires a showing of indigency. (*Mayer* v. *City of Chicago, supra*, 404 U.S. 189; *Williams* v. *Oklahoma City* (1969) 395 U.S. 458 [23 L.Ed.2d 440, 89 S.Ct. 1818]; *March* v. *Municipal Court, supra*, 7 Cal.3d 422; *Preston* v. *Municipal Court* (1961) 188 Cal.App.2d 76 [10 Cal.Rptr. 301].)

Notwithstanding the majority's criticisms, they conclude *Armstrong* was "half right" by holding *indigent* misdemeanants have a right to a court reporter at state expense. The majority reasons as follows: (1) *March* v. *Municipal Court* abolished the "colorable need requirement" (i.e., any lawyer worth his salt can conjure up appellate issues pretrial); (2) *March* v. *Municipal Court* requires an adequate appellate record to satisfy due process; (3) a fortiori court reporters (for indigents) must be provided at state expense upon request in misdemeanor proceedings.

Since no case directly holds (other than *Armstrong*) court reporters must be provided to indigent or nonindigent misdemeanants, the majority relies upon the exercise of judicial administration to support its holding. They declare "there is little an appellate court can do when the collection of a verbatim record is denied and a statement cannot be settled, except to reverse for lack of an adequate record." (Majority opn., *ante*, at p. 1051.) (Cf. *People* v. *Goudeau* (1970) 8 Cal.App.3d 275 [87 Cal.Rptr. 424].) Thus, the majority comes full circle to *Armstrong* in holding the inadequacy (or mere potential inadequacy) of a settled statement compels as a prophylactic remedy the obligation to provide court reporters to indigent misdemeanants in order to avoid the necessity of reversals and retrials.

The above analysis does not, however, support the majority's holding court reporters must be provided to only the indigent. Acknowledging the inadequacy

of the settled statement process, the majority makes much of the costs inherent in supplying a verbatim record in all misdemeanor proceedings, and points out most misdemeanants do not appeal, nor do all misdemeanor proceedings require a court reporter. To justify the limitation of their holding to indigents, the majority asserts those who can, should pay.

This analysis merely begs the question. The fact is, court reporters are provided in all superior court criminal and civil proceedings, and in preliminary examinations (Code Civ. Proc., § 269; Pen. Code, § 869). Similarly, civil litigants in municipal courts are provided court reporters at their request (Code Civ. Proc., § 274c) regardless of how insignificant or unmeritorious the claim. Further, while most misdemeanants do not appeal, the use of a settled statement procedure without the ability to refer to a verbatim record to resolve factual disputes, is an inadequate (or potentially inadequate) form of appellate record.

The majority holding places the nonindigent in an untenable position. Prior to trial the defendant must elect whether to expend funds and obtain the services of a court reporter or hope, upon appeal, a settled statement is constitutionally adequate. If not, the added pains of reversal and retrial await.[2] The wealthy are as entitled to due process fairness as the poor. To say the poor have a constitutional right to the due process guarantee of an adequate appellate record, but not the nonindigent, comports with neither the spirit nor the letter of due process.

Appellant's petition for a hearing by the Supreme Court was denied August 18, 1983. Bird, C. J., Reynoso, J., and Grodin, J., were of the opinion that the petition should be granted.

---

[2]Or does the majority hold nonindigent misdemeanants waive their constitutional right to an adequate record on appeal by choosing not to employ a court reporter?