[No. D022884. Fourth Dist., Div. One. Nov. 26, 1996.]

SAVE OUR FOREST AND RANCHLANDS, Plaintiff and Appellant, v. COUNTY OF SAN DIEGO et al., Defendants and Respondents.

1760

**COUNSEL**

Charles S. Crandall, Michael Ray Harris, Milberg, Weiss, Bershad, Hynes & Lerach, William S. Lerach, Leonard B. Simon and William S. Dato for Plaintiff and Appellant.

John J. Sansone, Acting County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Mark C. Mead, Deputy County Counsel, for Defendants and Respondents.

## Opinion

**BENKE, Acting P. J.**—In this case we are called upon to interpret and apply the provisions of California Rules of Court,[1] rule 870.2(b), as recently amended, and Code of Civil Procedure[2] section 473. Under rule 870.2(b) a motion to recover attorney fees incurred in the trial court in civil cases must be filed within the period permitted for filing a notice of appeal from the trial court's judgment. While initially this limitation only applied to claims based on attorney fee provisions in contracts, by way of an amended version of the rule which became effective on January 1, 1994, this time limitation was also made applicable to statutory fee claims.

Contrary to the appellant's argument, we find the limitation imposed by rule 870.2(b) applies to all motions for attorney fees made after the effective date of the amendment, even where, as here, at the time the underlying trial court judgment was entered, no time limit governed the appellant's statutory claim to attorney fees. In such cases the time in which to make a motion began running when the amended version of the rule became effective.

However we also find any failure to meet the time limitation set forth in rule 870.2 is subject to relief under section 473. Importantly, we agree with appellant that the six-month period in which to seek relief under section 473 commences to run from the date on which a party's failure to meet the requirements of rule 870.2 is raised by an opponent or enforced by the trial court.

Thus in this case we affirm a trial court order denying the appellant's initial motion to recover attorney fees. The motion was untimely because the parties had 60 days in which to appeal the trial court's 1993 judgment and the motion for attorney fees was filed more than 60 days after the effective date of the amended version of rule 870.2(b). On the other hand, because the appellant moved for relief from default within six months after rule 870.2 was asserted by its adversary, the trial court erred in finding it had no power to consider the appellant's section 473 motion. Accordingly we reverse that order and remand for further proceedings.

I

### Factual and Procedural History

In 1992 petitioner and appellant Save Our Forest and Ranchlands (SOF), a California corporation, filed a petition for a writ of mandate in which it

---

[1] All further rule references are to the California Rules of Court unless otherwise indicated.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

challenged the validity of an amendment to the San Diego County general plan. SOF alleged the environmental impact report prepared by respondent County of San Diego (county) with respect to the plan amendment was defective and that the amendment was inconsistent with other provisions of county's general plan.

A trial on the merits was conducted in March 1993 and the trial court issued a decision in SOF's favor in May 1993. The trial court's judgment was entered on July 2, 1993, and the clerk mailed the parties a file-stamped copy of the order on that date.

On August 4, 1994, after an unsuccessful effort to reach an agreement as to its right to recover attorney fees and the amount of such fees, SOF filed a motion to recover its attorney fees under section 1021.5.[3] SOF requested a total of $819,000 in attorney fees. On September 28, 1994, county filed an opposition to the motion in which it argued SOF's request for fees was untimely under rule 870.2(b).

On November 28, 1994, the trial court denied SOF's fee motion. The trial court found the time limit imposed by rule 870.2(b) started to run when the amended rule became effective. Because the parties had 60 days to appeal the July 2, 1993, judgment and SOF's motion was not filed within 60 days of the effective date of the amended version of the rule, the trial court concluded the fee motion was untimely.

On December 9, 1994, SOF filed a motion for relief from default under section 473. Its motion was supported by an affidavit from its trial counsel in which he stated that he had been burdened with a tremendous workload in early and mid-1994 and was unaware of the potential impact of the amended version of rule 870.2(b) on SOF's fee claim.

The trial court found that the motion for relief from default was also untimely. In particular the trial court found the six-month period in which relief from a default may be granted commenced running when the period permitted by rule 870.2 expired. Because under the trial court's earlier ruling, the time in which to bring a motion under rule 870.2 expired on March 2, 1994, 60 days after the effective date of the amendment, the trial court found that the time in which to seek relief from the failure to bring a

---

[3]Section 1021.5 permits the trial court to "award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest."

timely motion expired before SOF's December 9, 1994, section 473 motion was filed.[4]

SOF filed a timely notice of appeal from the trial court's orders.

## II

### DISCUSSION

On appeal SOF contends that because the judgment which entitled it to attorney fees under section 1021.5 was entered before the amended version of rule 870.2 became effective, the rule has no application to its fee request. In the alternative SOF contends that its motion for relief from the provisions of the rule was timely. We reject its interpretation of the rule but agree that its motion for relief from default should have been heard on the merits.

### A. *Rule 870.2(b)*

Rule 870.2 "applies in civil cases to claims for statutory attorney fees and claims for attorney fees provided for in a contract." Rule 870.2(b) provides in pertinent part: "A notice of motion to claim attorney fees for services up to and including the rendition of judgment in the trial court shall be served and filed within the time for filing a notice of appeal under rules 2 and 3."[5]

As we have noted this version of rule 870.2 became effective on January 1, 1994. The prior version of the rule only applied to attorney fees recoverable under Civil Code section 1717. Previously a motion to recover fees under section 1021.5 could be made at any time so long as it did not unfairly prejudice the party being asked to pay the fees. (See *Angelheart* v. *City of Burbank* (1991) 232 Cal.App.3d 460, 466 [285 Cal.Rptr. 463]; *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213, 226-228 [226 Cal.Rptr. 265].)

■ We presume that the drafters of the amended version of rule 870.2 intended that it operate prospectively only. (*Tapia* v. *Superior Court* (1991)

---

[4]The parties agree that in ruling on SOF's section 473 motion, the trial court did not reach any other issue.

[5]The remainder of rule 870.2(b) provides: "The parties may, by stipulation filed before the expiration of the above time, extend the time for filing a motion for attorney fees until 60 days after the expiration of the time for filing a notice of appeal or, if a notice of appeal is filed, until the time within which a memorandum of costs must be served and filed under rule 26(d).

"For good cause, the trial judge may extend the time for filing a motion for attorney fees in the absence of a stipulation, or for a longer period than allowed by stipulation."

SOF did not obtain a stipulation or order extending the time for filing its motion for attorney fees.

53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434] (*Tapia*).) As SOF points out there is nothing on the face of the rule or otherwise available in its history which suggests any intention that it be given retrospective application. (*Ibid.*) However as the court in *Tapia* so aptly observed: "There remains the question of what the terms 'prospective' and 'retrospective' mean." (*Id.* at p. 288.) In general, rules which govern the procedure to be followed in future trials or other future proceedings are prospective, even if the rights or liabilities being determined came into existence before adoption of the rule. (*Id.* at pp. 288-289.)

■ "[A] law addressing the conduct of trials still addresses conduct in the future. This is a principle that courts in this state have consistently recognized. Such a statute ' "is not made retroactive merely because it draws upon facts existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future.' [Citation.] For this reason, we have said that 'it is a misnomer to designate [such statutes] as having retrospective effect.' [Citation.]

"We previously addressed this issue in *Estate of Patterson* (1909) 155 Cal. 626 [102 P. 941]. The case involved the proof of a will that was destroyed in ·the great San Francisco fire of 1906. The testatrix died later that year, unaware that her will was gone. In 1907, the Legislature amended the Civil Code to permit proof of a will ' "shown to have been . . . by public calamity destroyed in the lifetime of the testator, without his knowledge . . . ." ' [Citation.] Holding the new statute applicable, we stated that '[i]t is a mistake to characterize the amendment of section 1339 as a retrospective law. It relates wholly to what shall be done upon the trial of the application for probate, the proof that must be furnished and the facts which must be established. It applies only to trials which take place after its enactment. It can have no effect whatever on previous trials or enactments. It is prospective only in its nature.' [Citation.]

"Courts came to the same conclusion in subsequent decisions. In *Strauch* v. *Superior Court* [(1980)], 107 Cal.App.3d 45 [165 Cal.Rptr. 552], the court held to be prospective a statute which imposed on plaintiffs in malpractice suits the requirement of filing a certificate of merit, even as applied to causes of action that accrued before the statute's effective date. The new statute operated prospectively because it did not 'create a new cause of action or deprive a malpractice defendant of any defense on the merits or affect vested rights.' [Citation.] Similarly, in *Andrus* v. *Municipal Court* (1983) 143 Cal.App.3d 1041 [192 Cal.Rptr. 341] (disapproved on other grounds in

*Evangelatos* [v. *Superior Court* (1988)] 44 Cal.3d [1188,] 1207, fn. 11 [246 Cal.Rptr. 629, 753 P.2d 585]), the court immediately applied a new statute eliminating the right to appeal from certain orders of the superior court denying extraordinary relief. Noting that '[r]etroactive is not an apt word, of course,' the court found it 'absurd' to 'subscribe to the notion that the Legislature desired to postpone the demise of a procedural loophole . . . .' [Citation.] Once again, the court in *Republic Corp.* v. *Superior Court* (1984) 160 Cal.App.3d 1253 [207 Cal.Rptr. 241] immediately applied a new, mandatory statute requiring dismissal for prolonged failure to prosecute and making the plaintiff's diligence irrelevant. The court observed that application of the new statute to a case filed before its enactment was not 'retroactive' because the statute's effect was ' "actually prospective in nature . . . ." ' [Citation.]

"From these cases, it is evident that a law governing the conduct of trials is being applied 'prospectively' when it is applied to a trial occurring after the law's effective date, regardless of when the underlying crime was committed or the underlying cause of action arose." (*Tapia, supra,* 53 Cal.3d at pp. 288-289.)

Thus, as a general proposition, application of the current version of rule 870.2 to motions for attorney fees made after January 1, 1994, does not necessarily involve retrospective application of the rule's time limits even where the judgment giving rise to the right to attorney fees was entered before the new rule became effective. The rule was intended to apply to motions made after its effective date and such application in most instances is prospective only. (*Tapia, supra,* 53 Cal.3d at p. 289; *Republic Corp.* v. *Superior Court* (1984) 160 Cal.App.3d 1253, 1257 [207 Cal.Rptr. 241].)

On the other hand, strict application of the new rule to all motions made after January 1, 1994, could have the unintended result of imposing the time limit during the period before the rule became effective. For instance, where, as here, a judgment was entered in July 1993, strict application of the rule would require that a court deny as untimely a motion made as early as January 1, 1994. We do not presume the drafters of the rule intended such a harsh result. (See *Olivas* v. *Weiner* (1954) 127 Cal.App.2d 597, 600-601 [274 P.2d 476]; *Nelson* v. *A. H. Robins Co.* (1983) 149 Cal.App.3d 862, 871 [197 Cal.Rptr. 179].) Indeed, we note: "[i]t has repeatedly been held that the Legislature may reduce a statute of limitations and that the new period applies to accrued causes of action *provided a reasonable time is allowed within which to assert the cause.*" (*Olivas* v. *Weiner, supra,* 127 Cal.App.2d at p. 600, italics added; accord, *State of California* v. *Superior*

*Court* (1983) 143 Cal.App.3d 754, 759 [192 Cal.Rptr. 198] (*Shortstop*).) Because immediate application of a shortened time limit could have the effect of terminating, upon enactment, many existing substantive rights, " '[i]t will be presumed that such was not the intent of the legislature.' " (*Olivas* v. *Weiner, supra,* 127 Cal.App.2d at p. 600.) Instead, in order to avoid potentially harsh results, drafters will be presumed to have intended that, with respect to pending proceedings any new time limit will begin running no earlier than the effective date of the new statute or rule. (*Ibid.*; *Shortstop, supra,* 143 Cal.App.3d at p. 759.)

Importantly the presumed intent recognized in *Olivas* and *Shortstop* gives parties with preexisting rights the same period of time in which to act as parties whose rights arise on the day a new time limit becomes effective. Where, as here, it is plain the drafters of rule 870.2 intended that all similarly situated fee claimants be treated similarly, it is difficult to reject such an outcome. ▇ In short then, we agree with the trial court's conclusion that because its judgment was entered before January 1, 1994, the time limits imposed by rule 870.2 began running on that date.

In reaching this conclusion we respectively decline to follow the holding in *Brown* v. *Swickard* (1985) 163 Cal.App.3d 820, 828-829 [209 Cal.Rptr. 844] (*Swickard*). In *Swickard* the court considered an amendment to section 170.6 which shortened the time in which parties must bring peremptory challenges to judges in one-judge courts. The amended statute, which required that challenges be made within 30 days of a party's appearance in actions pending in one-judge courts, became effective on January 1, 1983. The party asserting the challenge had appeared in a one-judge court in January 1982 but did not make a challenge to the judge until March 23, 1983, shortly before a motion for summary judgment was to be heard. The challenge was untimely under the amended statute but was timely under the rule which prevailed at the time the challenging party appeared in the one-judge court. The Court of Appeal held that the amended statute had no application to the motion. In particular the court rejected the defendant's contention that the 30-day period set forth in the amended statute began running on January 1, 1983, when the amendment became effective. In reaching this conclusion the court in *Swickard* did not discuss the well-established principle that changes in the procedures governing future trials and other proceedings are not retroactive even if the events which gave rise to the litigation occurred before the procedural change was made. Moreover the court did not discuss cases, such as *Olivas* and *Shortstop*, which, in order to avoid a harsh result, presumed that new time limits began running on the effective date of the statute creating them. Rather the *Swickard* court assumed that any application of the new rule to events which occurred before

it became operative involved retroactive application of the rule. The court stated: "The central inquiry on retrospective application of a statute is whether the Legislature intended the amendment to operate retroactively. [Citation.] Our search reveals nothing which suggests such a legislative intent. First of all, the statute is silent on its application to pending cases where appearances have already been made. We note also that there are no expressions of legislative intent bearing on the question in the legislative history of the amendment. Moreover, nothing can be gleaned from the legislative drafting process as there were no textual changes to this part of the amended version of section 170.6 from the date it was first introduced until its final enactment. Finally, it is settled that 'the legislative intent in favor of the retroactive operation of a statute cannot be implied from the mere fact that the statute is remedial and subject to the rule of liberal construction.' [Citation.]" (*Swickard, supra,* 163 Cal.App.3d at p. 828, fn. omitted.)

The difficulty we have with this analysis is the court's obvious assumption that where a party's appearance occurred before the new time limit took effect, any application of the limit to a later motion would involve retrospective application of the time limit. As we have seen this assumption was squarely rejected by the court in *Tapia, supra,* 53 Cal.3d at pages 288-289, and the other earlier cases which carefully defined the terms prospective and retrospective. (See, e.g., *Estate of Patterson* (1909) 155 Cal. 626, 638 [102 P. 941]; *Strauch* v. *Superior Court* (1980) 107 Cal.App.3d 45, 49 [165 Cal.Rptr. 552]; *Andrus* v. *Municipal Court* (1983) 143 Cal.App.3d 1041, 1047 [192 Cal.Rptr. 341]; *Republic Corp.* v. *Superior Court, supra,* 160 Cal.App.3d at p. 1257; *Olivas* v. *Weiner, supra,* 127 Cal.App.2d at pp. 600-601; *Shortstop, supra,* 143 Cal.App.3d at p. 759.) Contrary to the conclusion the court reached in *Swickard,* no retrospective application of the new time limit would occur if the time limit began running at the time the amended rule became effective and was applied only to motions made thereafter. (*Olivas* v. *Weiner, supra,* 127 Cal.App.2d at pp. 600-601; *Shortstop, supra,* 143 Cal.App.3d at p. 759; see also *Republic Corp.* v. *Superior Court, supra,* 160 Cal.App.3d at p. 1257.) Hence the court in *Swickard* erred in concluding that the defendants in that case were required to show some expression of legislative intent that the time limit have retrospective effect. Because no retrospective application was in fact urged, there was no need to produce evidence of the Legislature's intent that the time limit begin running when the rule became effective and apply to future motions to disqualify. (See *Tapia, supra,* 53 Cal.3d at pp. 287-288.)

As we have noted, when a new time limit has been imposed or an existing time limit has been shortened, courts have not resorted to expressions of

legislative intent to determine when the new time limit began running. Rather they have relied on a presumption that drafters did not intend to terminate existing rights but instead intended to give parties a reasonable time in which to preserve their rights. (See *Olivas v. Weiner, supra,* 127 Cal.App.2d at p. 600; *Shortstop, supra,* 143 Cal.App.3d at p. 759.)[6]

Turning back to the record here, we have noted the judgment which SOF obtained was entered on July 2, 1993, and that a file-stamped copy of the judgment was mailed to the parties on that date. The parties therefore had 60 days in which to appeal the judgment (rule 2(a); *Estate of Crabtree* (1992) 4 Cal.App.4th 1119, 1124 [6 Cal.Rptr.2d 224]), and SOF in turn had 60 days from January 1, 1994, in which to bring its motion for fees under section 1021.5. Thus the trial court correctly concluded that SOF's August 4, 1994, fee motion was untimely.

B.  *Section 473*

█  Next, we consider SOF's contention that in any event its motion for relief under section 473 was timely and that the motion should have been considered on its merits by the trial court.

█  By its terms section 473 permits a trial court to relieve a party from "a judgment, dismissal, order, or other proceeding taken against him or her" so long as a motion for such relief is made "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." The face of section 473 does not mention the failure to meet a procedural time limit as an incident which a court is empowered to relieve. However quite early in this century our Supreme Court found that such failures were covered by section 473 and the reasoning the court adopted in doing so largely controls our disposition of SOF's alternative argument. In *Estate of Simmons* (1914) 168 Cal. 390 [143 P. 697], a will contestant had

---

[6]In this regard we reject SOF's contention *Swickard* can be harmonized with *Olivas v. Weiner* and *Shortstop* on the basis *Swickard* deals with a procedural rule where the need to enforce the new time limit was not as great as the need to enforce the new statutes of limitation discussed in *Olivas v. Weiner* and *Shortstop.* First, we do not accept SOF's characterization as to the relative importance of the time limits or interests involved. Indeed because shortened statutes of limitation could cut off substantive rights, as opposed to collateral procedural advantages, a strong argument could be made that there was less relative need to enforce the new statutes of limitation. More importantly, however, we are unwilling to accept *Swickard* because it does not accurately define or consider the difference between prospective and retrospective applications of new procedural rules. That distinction has controlled the result in both statute of limitation cases and simple changes in procedure. (Cf., e.g., *Olivas. v. Weiner* [statute of limitation] and *Strauch v. Superior Court, supra,* 107 Cal.App.3d at p. 49 [certificate of merit requirement].)

failed to timely apply for and have a citation issued. After the time in which to obtain the citation had passed, a legatee under the will moved to dismiss the will contest. The contestant moved for relief under section 473 and the motion was denied because the trial court believed it had no power to relieve such errors. The Supreme Court reversed, stating: "The 'default' sought to be excused is a failure to take, within time, one of the requisite steps in the prosecution of the proceeding thus pending. The analogies to be drawn from the decided cases point to the conclusion that, in such a case, the granting of relief is permissible under section 473. As we have heretofore had occasion to point out, this court has given a very liberal interpretation to the provisions of this section. 'Thus, for example,' it was said in *Union C. Co.* v. *Oliver* [(1912)] 162 Cal.755 [124 P. 435], 'it has been held that the trial court may relieve a party from the consequences of his failure to serve in time a proposed bill of exceptions [citations], or statement on motion for a new trial [citation], or from a failure to present to the judge for settlement, within the time allowed, a statement on motion for new trial with the amendments thereto [citation].' The illustrations given are all of cases in which a step in a pending action or proceeding was required by the code to be taken within a specified time, and the holding, in each instance, was that *the objection to the belated taking of such step was a 'proceeding taken against' the delaying party*, and that relief might be given him under section 473." (*Estate of Simmons*, *supra*, 168 Cal. at pp. 395-396.)

The reasoning of the court in *Estate of Simmons* was repeated in *Colburn Biological Institute* v. *DeBolt* (1936) 6 Cal.2d 631, 634 [59 P.2d 108]. In *Colburn Biological Institute* an appellant had failed to timely file a bill of exceptions in the trial court and the trial court thereafter relieved the appellant from her mistake, even though the mistake was more than six months old at the time the appellant sought relief from it. "We are satisfied that the better rule is that the six months' period within which the trial judge retains jurisdiction to relieve from default is not set in motion until some proceeding or action is taken by the adverse party based upon the default or some order of the court is made as a result thereof. [Citations.]" (*Id.* at p. 634; see also *Pollitz* v. *Wickersham* (1907) 150 Cal. 238, 242-243 [88 P. 911]; *Weaver* v. *Shell Oil Co.* (1932) 124 Cal.App. 233, 235-236 [12 P.2d 167].) The court expressly disapproved an earlier case, *Buis* v. *Lindauer Corp.* (1931) 116 Cal.App. 558 [3 P.2d 18], which had held that the time began running when the mistake or default first occurred. (*Colburn Biological Institute*, *supra*, 6 Cal.2d at p. 634.) In doing so the court also implicitly rejected the earlier similar holdings in *McDowell* v. *Title Guarantee etc. Co.* (1920) 48 Cal.App. 400 [192 P. 103], and *Van Cott* v. *Frank* (1916) 30 Cal.App. 450 [158 P. 505], the cases upon which county now relies.

As SOF points out, following *Colburn Biological Institute*, no case has held that a trial court's power under section 473 commences to run from the point at which a procedural time limit has been missed. Rather, consistent with the reasoning articulated in *Estate of Simmons*, the courts have consistently found that action against a party which may be relieved under the statute occurs, and the six-month period in which a trial court is empowered to act commences to run, when a procedural time limit is raised as an objection by an adversary or is in some manner enforced by the trial court. (See, e.g., *Branscum* v. *State Comp. Ins. Fund* (1965) 232 Cal.App.2d 352, 355 [42 Cal.Rptr. 682]; *Freeman* v. *Goldberg* (1961) 55 Cal.2d 622, 625 [12 Cal.Rptr. 668, 361 P.2d 244].)

Here the earliest point at which it might be said that action against SOF was taken under rule 870.2(b) occurred when county relied upon the rule in its September 28, 1994, opposition to SOF's fee motion. (See *Estate of Simmons*, *supra*, 168 Cal. at p. 396.) Thus the trial court erred in determining that SOF's December 9, 1994, motion for relief under section 473 was not brought within the six-month period required by the statute. (See *Colburn Biological Institute* v. *DeBolt*, *supra*, 6 Cal.2d at p. 634.) Accordingly we reverse the order denying SOF's motion for relief from default and remand it to the trial court for further consideration of SOF's motion.[7]

Affirmed in part; reversed in part. Appellant to recover its costs of appeal.[8]

Nares, J., and Pate, J.,* concurred.

---

[7]We reject SOF's request that we determine the merits of its section 473 motion in its favor. Although SOF has made a strong showing, relief under section 473 is in the first instance a matter for determination by the trial court. (See *Martin* v. *Johnson* (1979) 88 Cal.App.3d 595, 604 [151 Cal.Rptr. 816].)

[8]We note SOF also requests that it be awarded the attorney fees it incurred on appeal. We decline to make an award at this point in the proceedings. However, SOF may seek recovery of the fees it incurred on appeal in the trial court. (See *Bouvia* v. *County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1081-1082 [241 Cal.Rptr. 239]; *Citizens Assn. for Sensible Development of Bishop Area* v. *County of Inyo* (1985) 172 Cal.App.3d 151, 177 [217 Cal.Rptr. 893].)

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.