[No. A104418. First Dist., Div. One. Dec. 23, 2004.]

GEORGE CRESPIN et al., Plaintiffs and Respondents, v.
SANDRA SHEWRY et al., Defendants and Appellants.

## COUNSEL

Bill Lockyer, Attorney General, James Humes, Assistant Attorney General, Douglas M. Press and Charlton G. Holland III, Deputy Attorneys General, for Defendants and Appellants.

Western Center on Law & Poverty, Richard A. Rothschild; Public Interest Law Project, Stephen Ronfeldt; National Immigration Law Center, Linton Joaquin; Brewer & Mitchell and Eugenie Denise Mitchell for Plaintiffs and Respondents.

OPINION

**MARGULIES, J.**—In 1993, plaintiffs obtained a permanent injunction requiring that the California Department of Health Services (DHS) provide certain restricted Medi-Cal benefits to undocumented aliens. A judgment incorporating the injunction's major elements became final in 1994, following DHS's appeal. In 1997 and 2000, DHS moved unsuccessfully for orders dissolving or modifying portions of the injunction. In 2003, plaintiffs applied for and were awarded attorney fees and expenses under the private attorney general statute for successfully defending the permanent injunction. DHS challenges the award, contending that plaintiffs' fee motion was untimely under California Rules of Court, rule 870.2. We find the rule inapplicable in the special circumstances of this case, and affirm the trial court's order awarding fees.

## BACKGROUND

Plaintiffs filed this lawsuit in March 1988. The lawsuit challenged the state's process for determining the eligibility of undocumented aliens for certain restricted benefits they may receive under the Medi-Cal program. Eventually, plaintiffs were granted a preliminary injunction preventing DHS from (1) denying restricted-scope coverage under Medi-Cal to undocumented aliens needing long-term care or dialysis, and (2) requiring aliens applying for benefits to disclose certain information concerning their immigration status or that of other family or household members. The early history of the litigation is described in *Crespin v. Kizer* (1990) 226 Cal.App.3d 498 [276 Cal.Rptr. 571], in which this court affirmed the preliminary injunction. (*Id.* at p. 523.)

On remand following the decision in *Crespin v. Kizer*, the trial court granted plaintiffs a permanent injunction preventing DHS from denying restricted-scope Medi-Cal Program coverage to undocumented aliens for long- term care and dialysis. In February 1993, the trial court entered judgment on the permanent injunction. The judgment was affirmed in substantial part in *Crespin v. Coye* (1994) 27 Cal.App.4th 700 [34 Cal.Rptr.2d 10]. Plaintiffs never sought attorney fees in connection with any of the litigation that occurred from 1988 through 1994.

In March 1997, DHS moved to dissolve or modify portions of the permanent injunction, arguing that under newly-enacted federal welfare legislation, undocumented aliens in California would not be eligible for long-term care and dialysis benefits unless California reenacted a state statute permitting such benefits. Judge Richard Hodge heard the motion in May 1997, but postponed a decision pending the outcome of proposed state legislation that

might make it moot. DHS renewed its motion in March 1998. In August 1998, Judge Hodge denied the motion after oral argument, and DHS appealed. While the matter was pending on appeal, the Legislature enacted Welfare and Institutions Code section 14007.65, which reauthorized long-term care and dialysis benefits for undocumented aliens. Due to the Legislature's action, the parties stipulated to the dismissal of DHS's appeal in September 1999. A remittitur was issued in November 1999.

The newly enacted statute, section 14007.65, provided that aliens receiving long-term care services as of the effective date of the statute would continue to receive those services, but that applicants after that date "shall be eligible to receive long-term care services to the extent that funding is made available for this purpose in the Annual Budget Act." (Welf. & Inst. Code, § 14007.65, subds. (a), (b).) In February 2000, DHS filed a new motion to modify the permanent injunction on the ground that its language should reflect the limitation on the eligibility of new applicants contained in the new statute so that DHS would not be placed under potentially conflicting legal obligations. In April 2000, Judge Hodge denied the motion without prejudice, finding that judicial intervention was not required at that time. DHS filed no appeal from the ruling.

There were no further proceedings in the case until October 2, 2002, when plaintiffs' counsel initiated settlement discussions with DHS over plaintiffs' entitlement to an award of attorney fees for successfully defending against DHS's postjudgment motions to modify the preliminary injunction. After settlement discussions failed, plaintiffs filed a motion for fees and expenses on May 29, 2003. The motion covered time spent and expenses incurred beginning in 1996 and continuing through the prosecution of the fee motion itself.

Rejecting DHS's contention that the fee motion was untimely under California Rules of Court, rule 870.2,[1] the trial court awarded plaintiffs $216,495.34 in attorney fees and expenses. This appeal followed.

## DISCUSSION

I. *Plaintiffs' Fee Motion Was Not Untimely Under Rule 870.2*

    A. *Rule 870.2 Does Not Address Postjudgment Fees*

The primary issue in this case is whether California Rules of Court, rule 870.2 sets a time limit for seeking attorney fees under Code of Civil

---

[1] All further references to rules are to the California Rules of Court.

Procedure section 1021.5 for fees incurred in successfully litigating *postjudgment* motions in the trial court. There appears to be no dispute that (1) plaintiffs' attorney fee claims satisfied the substantive requirements of section 1021.5,[2] and (2) plaintiffs' fee motion was untimely under rule 870.2(b)(1), *if* the time limit determined under that subdivision applies to motions to obtain statutory fees for postjudgment trial court litigation over the modification of a permanent injunction.

Rule 870.2 reads in pertinent part as follows: "(a) [Applicability] Except as otherwise provided by statute, this rule applies in civil cases to claims for statutory attorney fees and claims for attorney fees provided for in a contract. [¶] Subdivisions (b) and (c) apply when the court determines entitlement to the fees, the amount of the fees, or both, whether the court makes that determination because the statute or contract refers to 'reasonable' fees, because it requires a determination of the prevailing party, or for other reasons. [¶] (b) [Attorney Fees Before Trial Court Judgment] [¶] (1) A notice of motion to claim attorney fees for services up to and including the rendition of judgment in the trial court—including attorney fees on an appeal before the rendition of judgment in the trial court—shall be served and filed within the time for filing a notice of appeal under rules 2 and 3. [¶] . . . [¶] (c) [Attorney Fees on Appeal] [¶] (1) A notice of motion to claim attorney fees on appeal—other than the attorney fees on appeal claimed under subdivision (b)—under a statute or contract requiring the court to determine entitlement to the fees, the amount of the fees, or both, shall be served and filed within the time for serving and filing the memorandum of costs under rule 26(d). . . ."

DHS would have us analyze the intended scope of rule 870.2 as follows: The word "judgment" in subdivision (b)(1) unambiguously includes *any appealable order*, whether entered before or after judgment.[3] This flows from the fact that the subdivision references rules 2 and 3, and from the definition of "judgment" found in rule 40. Rule 2(a) states that a notice of appeal must be filed on or before the earliest of 60 days after the notice of entry of judgment is served or 180 days after entry of judgment. Subdivision (f) of rule 2 specifies that as used in subdivision (a), " 'judgment' includes an appealable order if the appeal is from an appealable order." Rule 3, addressing trial court motions that extend the time to appeal, also applies by its express terms to appeals from appealable orders as well as judgments. Further, the definitions section of the appellate rules of court, rule 40,

---

[2] If its preconditions are met, Code of Civil Procedure section 1021.5 authorizes an award of attorney fees to a successful party in litigation "which has resulted in the enforcement of an important right affecting the public interest."

[3] A postjudgment order denying a motion to modify or dissolve a permanent injunction is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(1), (6); *In re Glacier General Ins. Co.* (1991) 234 Cal.App.3d 1549, 1553–1554 [286 Cal.Rptr. 262].)

provides that "[i]n these rules, unless the context or subject matter otherwise requires [¶] . . . [¶] '[j]udgment' includes any judgment, order or decree from which an appeal lies." (Rule 40(g).) Based on the reference to rules 2 and 3 in rule 870.2, and the definition of "judgment" found in rule 40, DHS argues that the deadline set by rule 870.2(b)(1) unambiguously applies to any motion to obtain statutory fees for trial court activities regardless of whether the legal services for which fees are sought resulted in a judgment or an appealable order. And, in the case of an appealable order, DHS contends the subdivision applies regardless of whether the services were rendered before or after a final judgment.

DHS has also requested that we take judicial notice of documents contained in the files of the Administrative Office of the Courts (AOC) reflecting the drafting history of rule 870.2. We have done so. According to DHS, these documents confirm its interpretation that "judgment" encompasses all appealable orders and that the rule, as reenacted effective January 1, 1994, was intended to set time limits for bringing any motion for statutory attorney fees, whether the motion pertained to activities taking place before or after the original judgment became final.[4]

■ As discussed in detail below, our own analysis of the text and drafting history of rule 870.2 fails to support DHS's interpretation. In our view, the rule was not intended to govern the time for bringing motions for fees arising from post-final-judgment activities, such as litigation over modifications to a permanent injunction. The rule's drafters either did not consider such post-judgment fee motions or decided not to address them in the rule.

■ "The usual rules of statutory construction are applicable to the interpretation of the California Rules of Court." (*Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 703 [114 Cal.Rptr.2d 541].) Our objective is to determine the drafters' intent, using the words of the rule as our starting point. (*Kahn v. Lasorda's Dugout, Inc.* (2003) 109 Cal.App.4th 1118, 1122–1123 [135 Cal.Rptr.2d 790].) If the language of the rule is clear and unambiguous, it is unnecessary to probe the rule's drafting history in order to ascertain its meaning. (*Ibid.*) If possible, we attribute significance to every word, phrase, sentence and part of a court rule. (*Lammers v. Superior Court* (2000) 83 Cal.App.4th 1309, 1321 [100 Cal.Rptr.2d 455].) "We accord a challenged rule a reasonable and common-sense interpretation consistent with its apparent purpose, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." (*Ibid.*)

---

[4] The pre-1994 version of the rule covered contractual attorney fee motions only, and required any notice of motion claiming such fees to be filed before or with the memorandum of costs. The 1994 amendments repealed and reenacted rule 870.2 in a substantially new form to cover fees recoverable by statute as well as contract.

■ We note first of all that the term "appealable order" does not appear in rule 870.2. It is true that subdivision (b)(1) of rule 870.2 makes reference to other rules—rules 2 and 3—that do define the word "judgment" to include appealable orders under certain circumstances. But that reference, by its express terms, merely borrows the *time limits* for filing a notice of appeal set forth in rules 2 and 3. It does not purport to incorporate any of the special definitions rules 2 and 3 employ. Those definitions are specific to the subject matter of rules 2 and 3: setting a readily determinable time limit for filing a notice of appeal. It makes perfect sense in that context to have a single time limit applicable to both judgments and appealable orders. In fact, rule 2(f) states expressly that its definition of "judgment" to include an appealable order only applies if the appeal is from an appealable order rather than a judgment. Rule 870.2 addresses an entirely different subject: setting a time limit for seeking attorney fees. For that purpose, there is no obvious reason to impose the same time limit for bringing fee motions after entry of appealable orders and judgments. If anything, as further discussed below, such an equation would promote piecemeal litigation over fees, which the drafters of rule 870.2 wanted to avoid.

Rule 40 also does not advance DHS's position. Rule 40 appears in the context of *appellate* rules. Almost all of its definitions refer specifically to appellate procedures and terminology. Rule 870.2 makes no reference to rule 40. If anything, the fact that rules 2 and 40 contain special definitions of the word "judgment" merely confirms that, outside of the rules of appellate procedure, an "appealable order" is something entirely different than a "judgment." Precisely because rule 870.2 is *not* a rule of appellate procedure, one would have expected its drafters to state explicitly that the time limits established under it would apply to appealable orders as well as judgments, if that is in fact what they intended. Courts, counsel, and litigants are entitled to rely on the plain language of a rule of court. (*Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 363 [70 Cal.Rptr.2d 449].) They should not have to go through the convoluted analysis that DHS resorts to in order to determine when a rule applies.

An intent to borrow rule 2's special definition of "judgment" is therefore anything but clear or unambiguous in the text of rule 870.2. At DHS's request, we have also examined the rule's drafting history for evidence of such an intent. No document of which we have been asked to take judicial notice refers to the special definition of "judgment" found in rules 2 and 40. We have found no sign in the drafting history of rule 870.2 that the effect of incorporating or not incorporating that specific definition into the rule by reference was ever considered or discussed.

■ DHS's interpretation of the rule is also not practical or consistent with wise policy. Reasonably construed, subdivision (b) permits a public

interest litigant to file a single fee motion covering all services rendered in litigating the case to a judgment in the trial court. It does so by setting a time limit for bringing a fee motion *"for services up to and including the rendition of judgment* in the trial court." (Rule 870.2(b)(1), italics added.) DHS's interpretation focuses narrowly on the word "judgment" and entirely ignores the italicized words that immediately precede it. Giving effect to the entire phrase, DHS's construction of the word "judgment" in rule 870.2 leads to an absurdity. Each time an appealable order was entered, the public interest plaintiff would be compelled to promptly apply for fees for all services "up to and including the rendition of [the appealable order]." Such a reading would *compel* premature and piecemeal litigation over fees. For example, absent a stipulation between the parties or a court order, public interest litigants would have to file protective fee motions under Code of Civil Procedure section 1021.5 before the court could even determine which side had been "successful" in the litigation or whether the litigation had "resulted" in the enforcement of a public right. A plaintiff who guessed wrong as to which prejudgment orders were appealable, would lose the right to recover for the time spent in litigating them. In addition, the fee applicant would have to claim fees not only for services resulting in the appealable order but also for all unrelated services that occurred before its rendition. At least as applied to prejudgment appealable orders, DHS's interpretation of the rule does not seem sensible, practical, or consistent with either the language of the rule or the dictates of wise policy.

■   To prevail in this fee litigation, DHS must also show that rule 870.2 applies equally to postjudgment and prejudgment appealable orders. In our view, the text and drafting history of the rule show that it was never intended to cover services rendered on trial court matters arising after final judgment. ■   In construing a statute, it is well established that section headings may properly be considered in determining intent, and are entitled to considerable weight. (*People v. Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) DHS's interpretation directly conflicts with the heading of subdivision (b). That heading reads "Attorney Fees *Before Trial Court Judgment.*" (Italics added.) DHS fails to explain why a provision it claims was intended to cover postjudgment as well as prejudgment fee claims carries a heading negating such an intent. The drafting history of that language in fact confirms that rule 870.2 was not intended to address postjudgment appealable orders such as those at issue in this case.

An early draft of subdivision (b) of rule 870.2 circulated for comment in June 1992 read in pertinent part as follows: "(b) [Prejudgment attorney fees] A notice of motion to claim [statutory] prejudgment attorney fees shall be served and filed before or at the same time the memorandum of costs is served and filed. . . ." One of the comments received on that draft, as

summarized by AOC staff, was that "it is misleading to call fees 'prejudgment' when they cover the period down to judgment" and that such term should be reserved for "interim fees before judgment." As discussed below, the "rendition of judgment" language in the current rule appears to have been drafted to address this concern.

In October 1992, the Board of Governors of the State Bar wrote to the AOC reporting that the proposed rule had generated "substantial comment" from the bar's Standing Committees on Appellate Courts and on Administration of Justice, as well as from the bar's Environmental Law, Legal Services, and Litigation Sections. Based on that extensive input from practitioners, the board proposed that the time for filing a "claim for prejudgment fees" be extended until 60 days after service of notice of entry of a judgment or dismissal. The letter repeatedly referred to proposed rule 870.2 as covering claims for "prejudgment fees." There is no suggestion in it that the Board of Governors—or any of the State Bar members whose comments it had taken into account—viewed the rule as covering anything other than prejudgment fees, or that it viewed the word "judgment" as encompassing appealable orders.

Later in October of 1992, after noting the comments just discussed, among others, AOC staff proposed a revised version of the rule which included the following new heading and language for subdivision (b): "(b) [Trial court attorney fees] A notice of motion to claim attorney fees for services up to and including the rendition of judgment in the trial court shall be served and filed [within 60 days after service of notice of entry of judgment, or 180 days after judgment is entered if no notice served]." A later revision released in January 1993, keyed the time deadline to rules 2 and 3, but retained the "services up to and including the rendition of judgment" language that is still present in the rule. There is no suggestion in the drafting history that the purpose of referencing rules 2 and 3 in rule 870.2 was anything other than to incorporate or "borrow" the time limits applicable to filing a notice of appeal after judgment. An October 1993 memo from the Civil and Small Claims Standing Advisory Committee to the Judicial Council merely stated that the language referencing rules 2 and 3 would "relate *the time for* claiming attorney fees to *the time for* filing notice of appeal." (Italics added.)

This early drafting history therefore supports plaintiffs' view that, from its inception, rule 870.2 was not intended to cover fee applications for postjudgment litigation in the trial court. It was directed to the vastly more frequent problem of prejudgment fees.

This point was further illustrated when rule 870.2 was amended, effective January 1999, at the request of the Appellate Advisory Committee. The

express purpose of the 1999 amendments was to permit a party to postpone seeking attorney fees for an interlocutory appeal until a final judgment had entered. The committee's proposed amendments, later adopted without modification by the Judicial Council, changed subdivision (b)(1) by inserting the following italicized heading and language: "(b) [*Attorney fees before trial court judgment*] [¶] (1) A notice of motion to claim attorney fees for services up to and including the rendition of judgment in the trial court—*including attorney fees on an appeal before the rendition of judgment in the trial court*—shall be served and filed within the time for filing a notice of appeal under rules 2 and 3." (Italics added.)

Again, the drafters' choice of language in the 1999 amendments evidences their clear understanding that subdivision (b) addresses claims for prejudgment fees only. There is no other way to explain why the revised heading to subdivision (b), "Attorney fees *before trial court judgment*," sailed through the Judicial Council's vetting process without comment or amendment in 1998 and has remained on the books unchanged since January 1, 1999. Moreover, it would make little sense to extend the time to bring a motion for fees for work on an interlocutory appeal until the end of the case, as the amended subdivision (b)(1) does, while requiring that fees for the work involved in obtaining the appealed order be claimed immediately or be forfeited. DHS makes no attempt to explain this anomaly. Conversely, we find no evidence in the drafting history that any participant intended or expected that subdivision (b) would apply to fee claims arising from services rendered long after judgment was entered.

In its reply brief, DHS points out that another appellate court has held that the word "judgment" in rule 870.2 also applies to voluntary dismissals. (See *Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, 426–429 [111 Cal.Rptr.2d 837] (*Sanabria*).) The *Sanabria* court cites two grounds for its holding: (1) although nonappealable, voluntary dismissals immediately resolve the action as to the dismissed defendant and therefore effectively constitute judgments under rule 2; and (2) the drafting history of rule 870.2 showed that language explicitly covering dismissals was inadvertently altered in the belief that the substitute wording would also cover dismissals. (92 Cal.App.4th at pp. 426-429.) Although the court speculates in passing that a prejudgment appealable order might trigger the time limit set by rule 870.2(b)(1), it does not analyze that proposition, rely on it, or test it against the text and drafting history of the rule. (See *Sanabria,* at pp. 426–427.) There is also no hint in *Sanabria* that the court ever considered whether rule 870.2 could apply to appealable orders entered *after* rendition of judgment.

It is true as DHS contends that rule 870.2 was adopted in 1994 in response to the Supreme Court's concern that attorney fee claims under Code of Civil

Procedure section 1021.5 could be filed at any time. (*Sanabria, supra,* 92 Cal.App.4th at p. 427.) A letter to the AOC from the court expressed concern that fee applications could be brought piecemeal on different grounds and that, without time limits, fee litigation could potentially be never-ending. That concern would exist, at least theoretically, whether the fees in question were for legal services provided in the trial court before final judgment, or after it. But, as a practical matter, the vast majority of cases will not involve any claims for postjudgment services. In our view, in drafting and amending rule 870.2, the Judicial Council either did not consider the highly exceptional issue of postjudgment fees, or it deliberately chose not to tackle that comparatively small part of the problem. The question of whether this issue should be addressed in the rule and, if so, how best to approach it, must be left to the Judicial Council. Placing a strained construction on the existing rule, as DHS invites us to do, would create more problems than it resolves.

### B. *The Orders Denying Modification Were Not Final Judgments*

DHS argues in the alternative that the trial court's rulings denying its 1998 and 2000 motions to modify the injunction were themselves final judgments "in substance and effect" for purposes of rules 2 and 870.2. DHS is correct that it is the substance and effect of an order, not its label or form, that determines whether it is a final judgment. (*Joyce v. Black* (1990) 217 Cal.App.3d 318, 321 [266 Cal.Rptr. 8].) We also agree with the court in *Sanabria,* that events such as a voluntary dismissal that are in substance final judgments start the clock running under rule 870.2.

But DHS provides no analysis to back up its conclusory assertion that an order denying a motion to modify an injunction is in substance a final judgment. Considering the nature of injunctive relief, DHS's position seems dubious: "[A]lthough purporting on its face to be permanent, [a permanent injunction] is in essence of an executory or continuing nature, creating no right but merely assuming to protect a right from unlawful and injurious interference. Such a decree, it has uniformly been held, is always subject, upon a proper showing, to modification or dissolution by the court which rendered it." (*Sontag Chain Stores Co. v. Superior Court* (1941) 18 Cal.2d 92, 94–95 [113 P.2d 689].) Viewed in this light, the 1998 and 2000 orders denying DHS's motions to modify portions of the permanent injunction have no attributes of a final judgment. Neither order finally determined all issues, or ended the litigation as to any party. (See Code Civ. Proc., § 577; *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29

Cal.Rptr.2d 804, 872 P.2d 143].) In fact, both orders were inherently made "without prejudice" because of the uncertainty over future legislative developments that existed at the time they were decided.[5]

We find no merit in DHS's alternative argument that the postinjunction orders for which fees were sought were in substance final judgments for purposes of rule 870.2.

## II. *Unfair Prejudice*

■ Our holding that rule 870.2 does not apply to fee applications for services rendered in the trial court after judgment does not mean that the filing of such motions can be indefinitely delayed. As noted in *Save Our Forest & Ranchlands v. County of San Diego* (1996) 50 Cal.App.4th 1757 [58 Cal.Rptr.2d 708], prior to the adoption of rule 870.2, a motion to recover fees under Code of Civil Procedure section 1021.5 could be made at any time so long as it did not unfairly prejudice the party from whom fees were sought. (50 Cal.App.4th at p. 1763.) Although DHS alleges that it incurred prejudice as a result of plaintiffs' three-year delay in bringing their fee motion, it never explicitly argued—either in the trial court or in its opening brief on appeal—that plaintiffs' fee motion may be denied on that ground alone.[6] Moreover, DHS submitted no declaration to the trial court specifying or showing how it was prejudiced by plaintiffs' delay in filing. DHS has therefore waived any claim that plaintiffs' fee motion should have been denied due to unfair prejudice.

■ DHS's claim that it suffered prejudice as a consequence of plaintiffs' three-year delay in bringing their fee motion is also not persuasive on the merits. This is not a case where key witnesses or documents have become unavailable. Although memories can fade over a three-year period, that would be a problem in any complex litigation. The permanent injunction in this action was not entered until five years after the case was filed. Even a timely motion for prejudgment fees under rule 870.2 would have required the parties to reconstruct litigation activities occurring five years earlier. In any event, fee motions must be based on detailed time records, not on the memories of the attorneys involved. The fact that Judge Hodge retired in the interim also

---

[5] For that reason, plaintiffs argue that neither order was in fact appealable. The 2000 order, in particular, was expressly made "without prejudice." We have assumed for purposes of our analysis, however, that both orders were appealable. The difficulty of determining whether an order is in fact appealable underscores the impracticality of starting the time period for filing a fee motion whenever the trial court enters an appealable order.

[6] We cannot determine whether DHS made such an argument at the time plaintiffs' fee motion was heard because no transcript of that hearing has been included as part of the record on appeal.

does not show prejudice. As plaintiffs point out, Judge Hodge had stated on the record at the last hearing in 2000, that he was highly impressed with the legal work performed by both sides in the case. There is no reason to assume that he would have decided the fee motion more favorably to DHS than the judge who heard the motion in 2003. We also fail to see how plaintiffs' delay prevented settlement of the fee issue, as DHS contends.

DHS failed to preserve its claim of unfair prejudice for appellate review, and failed in any event to create a record adequate to substantiate such a claim.

## DISPOSITION

The order awarding attorney fees to plaintiffs is affirmed.

Stein, Acting P. J., and Swager, J., concurred.